RADFORD v. FOLSOM ET AL.

1. **Receiver:** DISPOSITION OF FUNDS: INTEREST. A receiver cannot be charged with interest upon funds in his hands simply because he deposits them in a bank with his own funds, from which he draws for use in his private business, it not being shown that any part of the funds in his hands as receiver were so drawn and used.

2. ——: COMPENSATION OF. Where no question is made as to the legality and propriety of the appointment of a receiver, and he has closed up the business in pursuance of his appointment, he is entitled to have his compensation paid from the funds in his hands and cannot be compelled to accept therefor a judgment against the party securing his appointment. Facts considered under which it was held that the cost of a receivership should be borne by the defendant.

3. ——: SETTLEMENT OF ACCOUNTS: COST OF REFERENCE. Where there is no claim of fraud or bad faith with reference to the accounts of a receiver, he cannot be compelled to pay the costs of a reference to settle the same.

*Appeal from Pottawattamie Circuit Court.*

THURSDAY, DECEMBER 16.

ACTION to quiet the title to and recover the possession of certain lands. Upon the application of plaintiff a receiver was appointed to collect rents and apply the proceeds thereof to the payment of taxes and incumbrances. From the final decree, settling the receiver's account, the plaintiff and the receiver appeal. The facts of the case appear in the opinion.

*Sapp, Lyman & Ament*, for plaintiff, appellant.

*Clinton, Hart & Brewer*, for receiver, appellant.

*Ross & Mayne*, for appellees.

BECK, J.—I. The action was originally commenced by Frank Folsom. The petition alleges that he is the owner in fee simple of certain lands therein described, consisting of

business property in the city of Council Bluffs, improved farms and unimproved lands and town lots. It is shown that plaintiff acquired the title by conveyance from Simeon Folsom, to whom the property was conveyed by the defendant, J. Folsom. The plaintiff alleges in the petition that the annual rental of the property is many thousand dollars, and it is occupied by tenants; that defendants claim to own the property, and have notified the tenants to withhold payment of rent from plaintiff and demanded payment to themselves; that defendants have commenced numerous actions at law to collect the rents, thereby causing plaintiff and the tenants to incur great expense in defending a multiplicity of suits, and preventing plaintiff from collecting any part of the rents, and that taxes and other incumbrances are maturing against the property, which, as well as expenses of repairs, should be paid from the proceeds of the rent. The petition asks that a receiver be appointed to take charge of the property, and collect the rents and apply the same in payment of incumbrances and for repairs, etc., and prays that the title be quieted in plaintiff. Upon the application of plaintiff, based upon this petition, the receiver was appointed, who qualified by giving bond and taking the oath required by law and the order of court. After the petition was filed, Radford, the assignee in bankruptcy of Simeon and Frank Folsom, was substituted as plaintiff.

The answer of defendants admits the conveyance by J. Folsom to Simeon Folsom, but alleges that the latter executed a bond to the former at the time the deed was executed, conditioned for the reconveyance of the property to J. Folsom upon repayment of certain sums of money paid and to be paid and advanced to him by Simeon; that the deed and bond was one transaction and operates as a mortgage.

The defendants also file a cross-petition alleging that the deeds set out in the petition are fraudulent, without consideration, and void, and praying that an account be taken of moneys paid out by plaintiff or his grantor in discharge of

liens on the property, and that a day be fixed for repayment to plaintiff.

By the final decree the court found and adjudged that the deed and bond constituted but one transaction and operated as a mortgage; that Frank Folsom purchased the property with notice of defendant's rights; that Simeon Folsom paid and advanced, as provided for in the bond, $57,056.73, which amount is due plaintiff, and that defendants may redeem the property upon paying that sum with interest, and upon redemption the title shall vest in defendants. But in case redemption be not made, the title shall fully vest in plaintiff. The court adjudged, and so decreed, that the money remaining in the hands of the receiver should be paid to defendants.

Subsequently the receiver filed his report showing that he had received $16,000, and that he had discharged certain taxes and liens and paid for certain repairs, which left in his hands $2,231.19. To this report defendants filed certain exceptions, and thereon based a motion for an order charging the receiver with interest on balances and other items, and charging plaintiff with the compensation of the receiver, costs of suit, certain taxes and other items of expenditure.

The receiver's report, together with the exceptions thereto, and motion, were sent to a referee, whose report of facts found and conclusions of law thereon are presented in the abstract in the following language:

" The referee finds as facts:

" 1st. That the receiver took charge of the property under the order of the court as hereinbefore set out.

" 2d. That he has paid taxes on the property, collected the rents and cared for the same.

" 3d. That during the time that he had charge of the property he received therefrom $16,336.25.

" 4th. That he disbursed $10,045.27.

" 5th to 9th inclusive. That certain items of expenditure therein named, amounting to $81.19, were for expenses not incurred by him as receiver.

" 10th.    That the receiver had placed the trust funds with his individual moneys, and had drawn from said combined funds for use in his private business.

" 11th.    That in paying taxes he had used county and city warrants which he had purchased at a discount, amounting in the aggregate to $224.56.

" 12th.    That the fair compensation of the receiver was $500 per annum.

" 13th.    That he did not, in his report, account for interest on balances in his hands, which balances were as follows:

July 1st, 1874 ....................... $  824.86
"        1875 ...................... 1,952.26
"        1876 ...................... 2,114.82
"        1877 ...................... 2,798.49
"        1878 ...................... 2,819.54
"        1879 ...................... 4,225.98

" 15th.    The receiver, in the management of his trust, has used ordinary care and diligence.

" 16th.    That he paid certain mortgages to the school fund on said property out of the trust fund, and also a mortgage upon the homestead (a part of the property in controversy) by stipulation of the parties.

" 17th.    That tax penalties were not permitted to accumulate through any want of care on his part, but for want of sufficient funds to pay the same.

*        *        *        *        *        *        *        *

" 22d.    That the receiver now has in his hands as the proceeds of the trust property, after deducting all payments and disbursements by him made as shown by his reports, the sum of $6,290.99."

The referee finds as conclusions of law:

*        *        *        *        *        *        *        *

" 4th.    That the items of expense paid by the receiver, not incurred by him as such, should not be allowed to him."

*        *        *        *        *        *        *        *

"18th. That the receiver should be charged with interest on yearly balances."

\*      \*      \*      \*      \*      \*      \*      \*

"21st. That the receiver should be charged with the discounts on city and county warrants used by him in the payment of taxes.

"22d. That an equitable proportion of the receiver's salary should be taxed to the plaintiff, and also items of cost in the main case, paid by the receiver.

"23d. That the receiver is entitled to the sum of $500 per annum, payable at the end of each year after his appointment, as compensation for his services.

"24th. That one-third the receiver's compensation should be paid from the fund in his hands, and two-thirds should be paid by plaintiff, and that judgment should be entered therefor in the original case, and the same be made a lien upon the property in controversy.

"25th. That the receiver should pay simple interest at the rate of six per cent per annum upon his annual balances after deducting therefrom one-third his annual compensation.

"26th. Upon the two-thirds of the receiver's annual compensation to be paid by plaintiff interest should be allowed the receiver at the rate of six per cent per annum from the end of each and every year, which interest amounts to $420.

"27th. That the receiver should account for discounts upon city and county warrants used in the payment of taxes.

"28th. That the following sums should be added to the said sum of................................$6,290.99
now in the receiver's hands, to-wit:

Amount of expenses paid not incurred by him as
receiver.........................................     81.19
Interest upon annual balances....................    657.92
Discount on warrants.............................    224.56
                                                   ─────────
          Total................................$7,254.66

Radford v. Folsom.

"29th.  Of this sum he should be allowed to retain of his compensation $1,138, leaving a balance in his hands of $6,115.57.

"30th.  That the sum of $2,277.76, with interest upon two-thirds of the receiver's compensation, should be taxed to plaintiff and the same made a lien upon the property in controversy, and that said sum should draw interest at the rate of six per cent until paid.

"The referee recommends that an order be made approving the report of the receiver, modified and corrected as indicated in the foregoing findings of fact and law; that he be allowed the sum of $500 per annum, payable annually, as compensation for his services as receiver, and that one-third thereof be paid from the funds in his hands, to-wit: the sum of $1,138.88, which amount he be permitted to retain as such compensation, the same being computed up to the 17th day of April, 1880, and that plaintiff pays the other two-thirds of such compensation, and that judgment therefor in the main case, as costs, be entered, and that the same be a lien upon the mortgaged property, which sum, to-wit: The sum of $2,277.76, with interest upon the annual compensation of $420 in the aggregate, making a total of $2,697.76, should be the amount taxed; and that the same should draw interest until paid.  Also that the receiver be ordered to pay into court for the use and benefit of the defendants the sum of $6,115.78, and the one-third the costs of this reference."

\*      \*      \*      \*      \*      \*      \*      \*

"Also that the costs of this reference be paid one-third by plaintiff and that the same be taxed as costs, and that one-third be paid by the defendants from the funds in the hands of the receiver, and that one-third be paid by the receiver, and that he be ordered to pay the same into court or that the same be entered as a charge upon the compensation allowed and deducted therefrom."

The report of the referee, against the exceptions of plaintiff and the receiver, was approved, and by the decree of the

court rendered thereon the receiver was required to pay to the clerk of the court for the use of defendants the sum of $6,115.87, and to retain from the moneys in his hands one-third of his compensation, being $1,138.88, and $2,697.76, being two-thirds of his compensation, with interest, it was decreed should be taxed against the plaintiff as costs. The costs of the reference, including $150, fees of the referee, were taxed to the receiver, and judgment rendered thereon.

The receiver and plaintiff prosecute this appeal. They make separately some objections to the decree, and unite in others. We will proceed to notice the objections in the order in which they are presented to our minds in the consideration of the case.

II. We premise by observing that the correctness of the decree in determining the amount due plaintiff, the terms of redemption, and, generally, the rights of the parties under the bond executed by plaintiff for the conveyance of the property, are not brought in question. The only objection we are required to consider upon this appeal pertains to the appropriation and disbursement of the money in the receiver's hands as made by the order of the court.

1. RECEIVER: disposition of funds: interest.

It will be observed that the referee concluded the receiver is chargeable with interest upon the annual balances in his hands. The court adopted the view of the referee, and rendered judgment accordingly. The decision of the court below upon this point is based upon the tenth finding of facts, which is in this language: "The receiver had placed the trust funds with his individual moneys, and had drawn from said combined funds for use in his private business." The facts here found are simply that the receiver had mingled the money received out of the property in his charge with his individual funds. From the funds so mingled he had taken money for use in his business. We are not authorized to extend or restrict the language of the finding. The question under consideration must be decided upon the very facts

Radford v. Folsom.

found; we cannot presume or infer the existence of other facts not expressed in the findings. It does not appear that the receiver ever used one cent of the trust funds, as they are called by the referee; nor does it appear that he acquired any credit or profit by their custody. It is not shown that they were deposited in bank to his individual credit. It does not appear that at any time he used all the funds in his possession, but on the contrary the language of the finding authorizes the conclusion that he did not, and, as we have said, it is not shown that any part of the amount of the trust funds were expended by him. It is not shown that he was negligent or unfaithful in the discharge of his duty, but on the contrary the referee finds that he has conducted the business with ordinary care and diligence. We are to determine, then, whether, in the absence of negligence and delay in disbursing the funds, and in the discharge of other duties, the mere fact that the receiver mingled the trust funds with his own money, without using such funds or acquiring any profit therefrom, renders him liable for interest.

It must be remembered that the receiver is an officer of the court, and the money in his hands is regarded as being in the possession of the court, he being charged, as such officer, with its custody. These are elementary principles that are admitted by defendant's counsel. The funds in the receiver's hands are subject to the order of the court, and either party may at any time apply to the court for direction to the receiver for their disbursement or investment. It surely cannot be claimed that the receiver must keep the identical money received by him in the discharge of his official duties separate from other moneys in his hands. No benefit would result to the parties interested in the funds, and the money would be no more safely kept by enforcing such a requirement. Such a practice is unknown to business men. They rely upon their books of accounts for accuracy in affairs of this kind rather than the device of keeping the money in their hands belonging to different funds in separate parcels. Men

of small experience in business, who have but little knowledge of book-keeping, may seek in this way aid to enable them to account correctly for money left in their hands by others; men of business never do. Such a practice, at times when the currency of the country is fluctuating in value and uncertain in security, might result in loss to the funds in hands of the receiver. At present, when we have the most stable and uniform currency this country or the world has known, no such danger exists. But, within the memory of business men who are not old, there was a time when it would have been extremely hazardous for a receiver or a public officer, as well as a private citizen, to lay up for future use the identical money received from day to day.

The law, we conclude, will not require a receiver or other officer to pay interest upon money received by him in the discharge of official duties upon the ground, without more, that he mingles it with his individual money and from the funds thus created draws money for his own use.

Counsel for defendants state the following rule of law as applicable to the point under consideration: "When the order appointing the receiver does not provide for the payment of his balances into the bank, the receiver will not be allowed to avail himself of the omission and to keep a balance in his hands without interest under pretense of waiting for some party in the cause to obtain an order upon him for payment. He ought to apply by summons, which should be served on the parties to the cause, for an order for that purpose, and that the costs thereof may be allowed him in his next accounts; and unless he does so, the court will charge him with interest." This rule will be found in 2 Daniels' Chancery Pleadings and Practice (4 Am. Ed.), p. 1,754. No other authority is cited by counsel in support of their position.

The facts of the case before us do not bring it within this rule. Another rule of practice of the English Court of Chancery, where the rule just stated had its origin, does not prevail here. The rule referred to, it will be seen, is the

foundation of the rule relied upon by counsel. It is this: The Bank of England has custody of the funds of suitors as the bankers of the English Court of Equity. These funds are managed by the bank, and are invested under the directions of the court. An officer called an accountant general is the medium through which the operations pertaining to these funds are performed. 2 Daniels' Chancery Practice (4 Am. Ed.), p. 1,782 *et seq;* p. 1,789 *et seq.* In this State we have no such general custodian of the funds under control of the courts. There is no rule of the court or statute of the State requiring an officer of the court charged with custody of funds in litigation to deposit them in bank. Such deposit may doubtless be made upon a special order of the court, but it is not the duty of such officer to apply for and procure upon his own motion an order of this character. Security for the safety of the funds is had through the receiver's bonds, not by the deposit of the money in bank. The receiver in the case before us was not, therefore, required to deposit in bank the balances of the funds in his hands.

It is not made to appear by the findings of the referee that the receiver made any delay in the disbursement of the funds in his hands, or in reporting his transactions in the discharge of his duties. The money, we are authorized to conclude, was paid at the times and for the purposes required by the orders of the court. Until the final decree neither party was entitled to the balances in the hands of the receiver. Under the findings of the referee, which fail to show that the receiver was negligent or dilatory in the discharge of his duties, or that he used any part of the funds, or in any manner acquired profit therefrom, it would be gross oppression to require him to pay interest upon the balances in his hands.

III. The decree of the court below directs that two-thirds of the receiver's compensation, with interest thereon, be taxed

2. ——: compensation of. as costs against the plaintiff, to whom alone the receiver is to look for this part of his compensa-

tion.   Both the receiver and plaintiff object to this provision of the decree.

Counsel of defendants, in support of the order, urge that the receiver was erroneously, if not wrongfully, appointed, the case not demanding, under the law, that the court should assume the custody of the property in dispute.   This position is not well taken.   It was not found and decided by the court below that the receiver was not properly appointed.   No such question seems to have been raised in any stage of the proceedings.   It cannot be denied that upon the pleadings the court had jurisdiction to appoint the receiver.   If jurisdiction existed its erroneous exercise could not affect the right of the receiver as long as the order of the court stands unreversed.   We may further remark that it may be well claimed upon the pleadings before us that a proper case is presented for the appointment of the receiver.   In the absence of the testimony, which is not before us, and of findings of facts by the referee upon matters pertaining to the question of the appointment of the receiver, we must presume that the order of the court making the appointment was correctly and not improvidently made.   The mere fact that the court found and so decreed that the plaintiff and defendants sustained the relations of mortgagee and mortgagors, does not demand a different conclusion.   The bond upon which defendants base their rights obligated the defendant, J. Folsom, to pay certain debts and future advances, and contained covenants obligating him to use all his personal property and devote his time and labor to that purpose.   The large sum found due plaintiff indicates that their covenants were not fully performed.   These considerations, together with the character and great value of the property, are grounds for holding that though the transaction between the parties was finally held to be in effect a mortgage, yet the order for the appointment of the receiver was not improvidently made.

The case before us is this:   The receiver was duly appointed in the exercise of the lawful jurisdiction of the court,

Radford v. Folsom.

and without objection raised by the defendant; he discharged the duties prescribed by law until the case was finally decided and the rights of the parties settled and an order made disposing of the balance of the funds in the receiver's hands. The case differs in essential particulars from *French v. Gifford*, 31 Iowa, 428, wherein we held that the compensation of a receiver should be paid by the party procuring his appointment. That decision was based upon the ground that the order appointing the receiver was vacated as having been erroneously made. In this case no such order was made, and no objection was raised to the receiver's continuing in the exercise of his function. It is believed that the authorities uniformly hold that when no question is made as to the legality and propriety of the appointment of the receiver, and he has closed up the business in pursuance of his appointment, his compensation should be paid from the funds in his hands. The rule may be different where the order appointing the receiver has been set aside and the property restored to the owner. It is stated in *French v. Gifford* that the authorities support the rule we have just announced. We think the equities of the case before us cannot bring it within any exception to this rule. The default of the defendant, and his failure to perform his covenants, were the grounds upon which the receiver was appointed. At no stage of the proceedings after the appointment was it brought in question. The funds coming into the hands of the receiver, being the rents and profits of the mortgaged property, will go to defendants unless a part of them be applied to the payment of the receiver's compensation. As we have seen, the defendant's default and failure to perform his covenants caused the proceeding requiring the services of the receiver. These services, consisting of care and management of the property, ought to have been rendered by defendant, and would have been rendered by him had he performed his duty under the obligations of the bond. Surely he alone should pay for the services rendered by the receiver.

IV.   The court ordered the receiver to pay one-third of the cost of the reference.   It follows from the conclusions above announced that this order is erroneous.   The report of the receiver, except as to some items of expenses, a discount upon county and city warrants, and interest upon balances in his hands, was sustained by the referee.   As to the interest upon the balances we hold the referee and the court below were wrong.   The report as to the items of expenses and premiums upon warrants could have been corrected, it seems to us, without the expense of a reference.   But be that as it may, we are not inclined to impose costs upon the receiver simply because his report as to these matters was incorrect, when it is not shown that the errors corrected were intentional, for dishonest purposes.   It is the privilege of an officer of the court, without cost or charge, to have directions from the court in discharge of his duty.   It would be a harsh rule to impose costs upon the receiver incurred in passing his accounts, when it is not claimed that his reports are made in bad faith, for fraudulent purposes.

3. ——: settlement of accounts.

V.   The plaintiff insists that the court erred in requiring the receiver to pay the money to the clerk, without the payment by him of the taxes of 1879.   The question here presented was not raised in the court below.   The only fact disclosed by the abstract involved in this question is that these taxes were not paid by the receiver; this is stated in his report.   The plaintiff failed to bring this matter to the attention of the court below; he cannot first raise it in this court.

VI.   The court in its judgment approving the referee's report discharged the receiver.   To this plaintiff objects.   As the evidence is not in the abstract it is impossible for us to pass upon this order.   We must presume that it was required by the testimony before the court.

Counsel for plaintiff insists that the property still demands the care and attention of the receiver, especially as the decree in the main case has been superseded by an appeal.   But by

Radford v. Folsom.

the subsequent order of the court below it appears that the receiver was discharged.   In the absence of a showing to the contrary by the record, we must presume the order was made upon a view of the whole case disclosed by the evidence before the court below.

If in truth the interest of the parties and the furtherance of justice demanded the continuance of the receivership, the parties or either of them were authorized to apply to the court below, or the judge thereof, for a proper order to that effect, or for the appointment of a new receiver or the re-appointment of the old one.

We are informed by a supplemental abstract filed by appellants that upon the application of plaintiff, after the appeal was taken in this case, an order was made continuing the receiver in the possession and control of the property, with the same powers conferred and duties imposed by his original appointment.   The questions relating to the discharge of the receiver, therefore, become immaterial.

The foregoing discussion disposes of all questions presented in the case.   The judgment of the court below is reversed, and the cause is remanded for a decree in harmony with this opinion.

REVERSED.

The motion of plaintiff to tax the costs of the amended abstract to defendant need not be passed upon, as the defendant must pay all the costs of this appeal.