HULDAH H. CLAPP *v.* ROBERT C. CLAPP AND OTHERS.

(MATTER OF RECEIVERSHIP OF THOMAS B. RAND

*Receiver of property — duty of, to take possession of it — neglect to collect debts — forfeiture of commissions for misconduct.*

An action having been brought for the removal of executors, who, by the terms of the testator's will, were authorized to carry on and manage the business of the Rossmore Hotel in the city of New York, upon the ground that such management by the executors was improvident and unsuccessful, a receiver of all the personal property of the testator, and of the lease, good will, furniture, fixtures and property of the hotel, was appointed, who immediately entered into possession of the hotel and of its furniture and fixtures, and continued to carry on its business, as receiver under the order of the court, until 1883, when he was induced to resign and surrender his receivership, and a new receiver was appointed. It appeared that the receiver first appointed had taken no steps, nor had he instituted any proceedings, to obtain the personal property of the testator from either one or both of the executors.

*Held,* that as he was appointed receiver of all and singular the personal property of which the testator died possessed, the executors were divested of the right to hold this personal property, or in any manner to prevent the receiver from taking possession of it, and that his failure to obtain the possession of the personal property, not connected with the business of the hotel, could not be excused under the legal principle relieving a receiver from the prosecution of actions without the leave of the court being first obtained for that purpose, as it did not appear that any such proceedings became necessary in order to obtain such personal property, and such rule did not relieve him from the duty of applying to the executors for and demanding the personal property which they had.

That he was not at liberty to assume a position of indifference, leaving the executors at liberty to deliver the personal estate over to him or not as they elected.

While a receiver may not be subjected to the obligation of commencing legal proceedings at once, he is bound to the duty of active diligence in obtaining possession of the estate.

That, it appearing that one of the executors, while in charge of the business of the hotel, had drawn from the assets and money of the estate some $15,000, which he at no time refunded, and that the receiver had knowledge of this overdraft, and took no means to recover this money, that such neglect on his part was a violation of his duty as receiver.

That the employment by him, as his attorney and counsel, of the same person who had been employed by such executor while the business was in his hands, and who continued afterwards to be the attorney and counsel of such executor, was in violation of his duty as receiver, which requires the selection by a receiver of a person to act as his legal adviser, where that may become necessary, who has not been identified with the legal business of either of the parties to the action.

*Semble,* that this rule is subject to the qualification that where such employment is made in good faith, with the assent of the parties, it will escape the condemnation of the court.

That the receiver also violated his duty in allowing bills to be contracted by the widow and family of one of the executors, who lived and boarded at the hotel, to the amount of some $12,000, as to which, the account having been made with the receiver himself, he was at liberty to take measures for its collection and add the money to the business of the hotel, which he wholly and entirely failed to do

That it was the duty of the receiver to ascertain the true condition of the business of the hotel which he had under his charge at as early a day as was practicable after his appointment.

That, by the practice preceding the present system, the receiver was bound to make an inventory and report within six months after his appointment, and in the changes made from time to time by the revision of the rules of practice, this practice has been continued in force by provisions in the rules rendering the preceding chancery rules governing this subject applicable to the duties of this receiver.

That the course of the receiver from the outset having been marked with neglect, inattention and misconduct, resulting in probable losses, which, to a great extent, could have been avoided if he had discharged his duties with that degree of vigilence which the law exacts from all persons acting in capacities of trust and confidence, that the court properly refused to allow him any commissions by way of compensation.

That until it was ascertained that the debts due to the estate which the receiver had negligently omitted to collect had become uncollectible because of such neglect it was not proper, as a successor had been appointed who had authority to collect such debts, to charge the former receiver with the amount of such debts.

*Schultz* v. *Pulver* (11 Wend., 362) and *Lowson* v. *Copeland* (2 Brown's Ch. C., 156) distinguished.

APPEAL by Thomas B. Rand, receiver, from an order settling his accounts and charging him with the payment of debts, which arose and accrued in the business of the Rossmore Hotel.

*Wheeler H. Peckham* and *Charles F. Crosby,* for the receiver, appellant.

*A. C. Brown, George C. Holt* and *William Mitchell,* for the respondent.

DANIELS, J. :

The controversy presented by this appeal has arisen out of the management of the Rossmore Hotel, in the city of New York, and the conduct of the appellant as receiver. The business of the hotel

was carried on by the firm of Hawley D. Clapp & Son. Hawley D. Clapp died on the 5th of January, 1880, leaving Robert C. Clapp, his son, his surviving partner. He made a will and codicil previous to his decease, by which he empowered the surviving partner to carry on the business of the hotel for the benefit of himself and of the testator's widow and his other children. And he appointed the surviving partner, together with Mortimer R. Clapp, another son, as the executors of his will, and letters testamentary were issued by the surrogate of the county of New York to these two executors. The business of the hotel was carried on by this surviving partner at a loss, although it had been attended with profit during the lifetime of his father, and the management of the estate by the executors was improvident and unsuccessful. And Huldah H. Clapp, the plaintiff in the action and the widow of the testator, in June, 1881, brought this action for the removal of the executors and the appointment of a receiver of all the personal property of the testator, together with the lease, good will, furniture, fixtures and property of the hotel. The executors, as well as the other children of the testator, were made parties to this action, and it finally resulted in the appointment of the appellant as receiver of all and singular the personal property of which the testator died possessed, and also of the good will, furniture, fixtures, property and stores of the firm of Hawley D. Clapp & Son, of the Rossmore Hotel, with the power to continue the management of the hotel until such time as the court might determine, or it should be thought judicious, to have the same sold, and to liquidate the accounts of the executors. This order was made on the 15th of June, 1881, and the appellant accepted the appointment and gave the security required to make it complete.

He immediately entered into the possession of the hotel, together with its furniture, fixtures, property and stores, and continued to carry on its business as receiver under this order until the 16th of November, 1883, when he was induced to resign and surrender his receivership, and Henry A. Callan was, with the consent of all the parties, appointed as receiver in the place and stead of Thomas B. Rand. The order by which this change was made directed a reference to take and state the accounts of Rand and to ascertain his expenses and advancements and the allowance to be made to him

for his services while in the exercise of his authority and the discharge of his duties as receiver. An application was made to the surrogate of the county of New York to remove the executors from their offices because of their mismanagement of the estate of the testator, and on the 19th of December, 1882, a decree was made by the surrogate removing Robert C. Clapp from his office as executor, but continuing Mortimer B. Clapp in his capacity of executor under the will. The receiver took no steps nor instituted any proceedings to obtain the property of the testator from either one or both of the executors. And upon the hearing before the referee it was concluded that he was not in fault for that omission, but upon the hearing of the exceptions filed to the referee's report it was held by the court that the receiver was chargeable with the property of which the executors had become possessed. And this conclusion of the court was warranted by the order appointing the receiver. The executors were each of them in their official capacity parties to the action and to the application on which the order was made. And no appeal was taken from the order and it became, therefore, final and conclusive upon these executors. And as it appointed Rand, the appellant, receiver of all and singular the personal property of which the testator died possessed, it had the effect of divesting the executors of the right to hold this personal property, or in any manner to prevent the receiver from taking or obtaining possession of it. The direction contained in the order was entirely ample for this purpose. It not only appointed him as receiver of the business of the hotel and the property therein, but of all the personal property of which the testator was the owner.

His failure to obtain the possession of the personal property, not connected with the business of the hotel, has been excused by the invocation of the legal principle relieving the receiver from the prosecution of actions without the leave of the court being first obtained for the purpose. (*Fincke* v. *Funke*, 25 Hun, 616; *Gawer* v. *Kent*, 70 Ind., 428; *Battle* v. *Davis*, 66 N. C., 252.) And while this may be as broad as it has been affirmed to be, in behalf of the receiver, its existence and application failed to afford him protection. For while he may not have been at liberty to institute legal proceedings to obtain the possession of property in the hands of the executors, it was not made to appear that any such proceedings whatever

became necessary. The rule requiring an application to be made for liberty to institute legal proceedings by a receiver has no application to the case, for it did not relieve him from the duty of applying to the executors for, and demanding of them the property of the testator which they had. And if such a demand had been made by him, it probably would have been successful, and the entire estate would have been placed in the hands of the receiver as the order intended it should be.

He was not at liberty to assume a position of indifference, leaving the executors at liberty to deliver over the personal estate to him, or not, as they elected. To approve of that conduct would be pernicious in the extreme, for the principle resulting from it would be to relieve the receiver from taking any steps whatever to invest himself with the possession of the estate to which he became entitled under the order. And that the law will not sanction. For while he may not be subjected to the obligation of commencing legal proceedings at once, he is bound to the duty of active diligence in obtaining the possession of the estate. (*Litchfield* v. *White*, 3 Seld., 438, 443; *Matter of Dean*, 86 N. Y., 398; *Stehman's Appeal*, 5 Barr, 413.) And that duty he wholly failed to perform for he did nothing whatever to place himself in the possession of the personal property not included in or connected with the hotel.

While Robert C. Clapp carried on the business of the hotel he drew from the assets and moneys of the estate the sum of $15,166.14, which he at no time refunded, and the receiver being chargeable with, and having knowledge of, this overdraft, took no measures whatever to obtain this money from him. Neither did he apply to the court at any time for instructions as to what he should do, or whether an action should be brought against Robert C. Clapp to recover this sum of money, but he wholly neglected it as a matter of no interest or importance to himself in the exercise of his authority as a receiver. Neither did he make any report to the court of the condition of the business of the hotel, or any statement concerning it, until an application was made to discontinue this action. And to resist that application he made an affidavit on the 30th of December, 1882, stating that the business of the hotel had resulted in a profit, for the first year of his administration, amounting to the sum of $13,370.46, while, as a matter of fact, the business

had in reality been carried on at a loss, or nearly so, in the most favorable view that can be taken of the situation of its affairs. The balance stated by him to have been realized in this manner was derived mainly from expenditures made on account of the furniture of the hotel, which, instead of being profits, was so much money paid out to keep up and carry on the business itself.

In the course of his management the receiver employed the same person as his attorney and counsel who had been employed by Robert C. Clapp while the business was in his hands, and who continued afterwards to be his attorney and counsel. This was not in consonance with his duty, for that requires the selection by the receiver of a person to act as his legal adviser, where that may become a necessity, who has not been identified with the legal business of either of the parties to the action. (*Cumming* v. *Edgerton*, 9 Bosw., 684; *Warren* v. *Sprague*, 4 Edw. Ch., 416; Edwards on Receivers [2d ed.], 110.) This rule is, however, subject to the qualification that where the employment is made in good faith with the assent of the parties, it will escape the condemnation or censure of the court. But that this counsel was so employed has certainly not been proven with any degree of probable clearness in the proceedings.

The counsel, with his family, made his home at the hotel while the business was being carried on by the receiver, and in that manner incurred an indebtedness to the receiver amounting to the sum of $2,773.49. No part of this was collected by the receiver, but it was applied by his successor, together with the additional sum of $1,500, to the payment of the account for legal services of this attorney and counsel. The widow and family of Mr. Clapp also lived and boarded at the hotel during the same time. Bills were rendered to them by the receiver, but they were allowed to remain unpaid until they amounted to the sum of $12,982.55. As to these accounts made with the receiver himself, he was at liberty to take whatever measures might have been necessary, to collect them, and add the money to the business of the hotel. But that he wholly and entirely failed to do, and in this respect, as the fact has been found on ample proof, disregarded the duties and obligations of his office.

As the result of the hearing before the referee, he allowed the receiver full commissions up to the 16th of September, 1882, amounting to the sum of $9,762.62. Of this sum the receiver, who

succeeded the appellant, paid to his predecessor the sum of $5,000, leaving, as the referee had sustained his right to fees and commissions, the balance of $4,762.62 unpaid. The receiver himself, in his accounts, claimed a balance of $15,995.15, but the residue over the balance stated by the referee was denied to the receiver because of his neglect and misconduct in the management of the business of his office. When the case came before the Special Term the conclusion of the referee was considered to be too liberal in favor of the receiver, and the court held that his conduct had been such as to deprive him altogether of the right to commissions by way of compensation. That decision was placed very much upon the various acts of neglect and misconduct which have already been mentioned. And it seems to be sustained by the rule of law mentioned in Stehman's Appeal (*supra*), where, in the course of the decision, it was declared by the court that "compensation to trustees is allowed in this and our sister states as the reward of faithful execution of the trust confided. * * * To compensate sloth, ignorance, reckless confusion and procrastinating delay, by which the interests of the *cestui que trust* are impaired instead of being promoted, would be to prevent the very object our system has in view in allowing compensation to trustees, by offering a premium to incapacity or dishonesty," and *Flagg* v. *Mann* (3 Sumn., 84), and *Matter of Commonwealth Insurance Company* (32 Hun, 78), confirm this principle. It is true that in that case and in others the duties more particularly of general assignees and trustees were considered by the courts, but no greater stringency has been required for the discharge of the duties of those persons than the law exacts from a receiver, who is an officer of the court, appointed to manage, preserve and take care of property subject to its custody. On the contrary, the duties and obligations of the latter are so similar to those of the former as to require the application of the same legal principle as the measure and determination of his obligations and duties. The course of this receiver from the outset seems to have been marked with neglect, inattention and misconduct, resulting certainly in probable losses, which, to a great extent, would have been avoided if he had discharged his duties with that degree of vigilance which the law exacts from all persons acting in capacities of trust and confidence.

It may be that the debt of Robert C. Clapp is in no more desperate condition than it was at the time when the receiver was appointed, but there is reason to believe that if active measures had been taken, as they would have been if the receiver had applied to the court for the directions which the circumstances required to be given concerning the collection of this debt, that a fair share of it might have been realized by the estate. He was interested as a legatee under the will of his father in his estate, and by proceeding against him with reasonable diligence, a part, or perhaps even the whole, of the balance owing from Robert C. Clapp could have been collected. If the receiver had ascertained and reported to the court the true condition of the business of the hotel, which he had under his charge at as early a day as was practicable after his appointment, he would not have been permitted to carry it on at the expense of a large loss to the persons interested in this estate. And it was his duty to ascertain and make such a report to the court, for, by the practice preceding the present system, the receiver was bound to make an inventory and report within six months after his appointment. (Edw. on Receivers [2d ed.], 611, 612.) And in the changes made from time to time by the revision of the rules this practice has been continued in force. The rules which have been adopted under the authority of the statute have contained no direction on this subject, but it was within the province of the court to continue in force the preceding practice. That was done by Rule 148 of the Equity Rules and Rule 103 of the Law Rules adopted in 1847. And it was in like manner continued by Rule 97 of the revision of 1875, and Rule 85 of the revision of 1880, and Rule 85 of the revision of 1883, rendering the preceding Chancery Rules governing this subject applicable to the duties of this receiver. And it was no more than a prudent person would have done in the investigation and ascertainment of his own affairs, and receivers are required by the settled rule applicable to their office to do as much as that. And if he had observed that obligation, or had even reported annually to the court, the state of the business would have been presented and explained, and the fact that it was carried on at a loss would have appeared. And from that circumstance the court certainly would have arrested its future progress, in the manner in which it was being done, and

prevented the future increase of its indebtedness to the sum of over $27,000, to which it amounted at the time when the receiver was displaced. It appears therefore, under the circumstances as they were made to appear, that the court was right in denying to this receiver his fees and commissions and requiring him to refund the amount he had received from his successor in office in part payment of the commissions claimed by him. But upon a further hearing he may yet be able to so far excuse himself as to entitle him to some part of the usual commission.

By the order appointing his successor in office, Callan was, in like manner as Rand himself had been, invested with all and singular the personal property of the testator, and of the good will, furniture, fixtures and stores of the Rossmore Hotel, and empowered to carry on its business. He was entitled to receive from his predecessor in office all the property that he held as receiver under the order making his own appointment. And this property, so far as it was in or about or appertained to the business of the hotel, was delivered over by Rand to his successor in office, and by the terms of the order he was discharged as receiver. This was consented to by the parties to the action, but the court held that this consent in no manner affected the rights of the creditors, and they were accordingly directed to be made parties to the proceeding before the referee. And notice was given to the creditors upon which they appeared, and contested the right of the appellant to be in this manner discharged. Their resistance was placed upon various facts, which the court finally considered to be sufficient to sustain the legal positions taken in their behalf. The referee adopted the same view, so far as the debts created by the receiver himself, in the management of the business of the hotel were concerned, but as to the debts previously created while the business was carried on under the will by Robert C. Clapp, a different view was adopted. The creditors entitled to those debts were excluded from the direction given by the referee for the payments to be made by the appellant. This direction, however, was so far extended upon the hearing resulting in the order from which the appeal has been taken, as to include all the debts which had been incurred in the course of the business of the hotel after the decease of the testator, as well as those created and incurred by the appellant himself. And as the receiver

by the order appointing him was invested with the entire personal estate of the testator, and the executors in this manner were practically superseded, there seems to have been no sound principle for the discrimination made by the referee. All the creditors stood upon an equal footing as to the estate. Neither had any specific lien upon any part of the property of the testator, but they were all entitled to be ratably paid out of his assets. And if debts were owing by the testator himself, his creditors should also have been notified of and made parties to the accounting.

The amounts of the debts remaining unpaid, which had been incurred by the surviving partner, was not large, but those of the receiver himself exceeded the sum of $12,000. And because he had failed to collect the amounts due from the widow and the other members of Mr. Clapp's family, and from the counsel for the board of himself and his family, and had failed in the discharge of other duties to the estate, the receiver was ordered by the court to pay off and extinguish the claims of these creditors.

But he certainly could not make these payments out of the assets or property which he had turned over to his successor in office. Neither had he the right, as receiver, to collect these unpaid debts, nor was it made to appear that any legal difficulty would be encountered by his successor in collecting these debts. The order, so far as it had taken effect, by which the official successor of the appellant was appointed, had resulted in transferring the estate to Callan, the second receiver, and vested him with the right to collect the debts owing to the receiver. The assets in this manner had been placed out of the power of the appellant. He was no longer entitled to exercise control over them, or to appropriate them to the payment of these creditors. And it was not expected by the court, in making the order, that he would do so, but that he should make the payments for the reason that it was concluded that the estate had lost so much by his misconduct as to justify this direction. And if that conclusion had been proven, the liability of the receiver would have been as broad as it was included in the order, for a receiver is chargeable with the value of property, which, by reasonable diligence, would have come into his hands, and has been lost by his omission to act. (*Pingree* v. *Comstock*, 18 Pick., 46.) But the fact upon which it rested was not made to appear by the proof. It was not

shown, as a matter of fact, what loss had been incurred by the fail-
ure to proceed against Robert C. Clapp for the recovery of the
money he had appropriated to his own use. Neither was it proved
that the counsel for the receiver, or the widow, or the children of
the testator, were insolvent, or that payment of the indebtedness.
against them was incapable of being collected, or that there was any
doubt as to their ability to pay their debts. Neither was it shown
that the estate had encountered any substantial loss by the failure to
report to the court the offers made for the leasehold estate of the
hotel, or for the failure of the appellant to enforce the collection of
the Hawley mortgage against the property in Westchester county,
or that the proceeds of the steam heating stock could not be recov-
ered, if in fact they did not belong to the widow, but formed a part
of the proceeds of this estate. But the court proceeded, in making
the order, upon the understanding that the appellant was liable,
although the debts themselves still remained capable of being col-
lected by his successor. The case of *Schultz* v *Pulver* (11 Wend.,
362), has been brought to the attention of the court as an authority
decisively sustaining the correctness of this conclusion. But the
facts there were so variant from those now presented, as to deprive
it of that effect. In that case the personal representative had been
cited to settle his accounts before the surrogate. This was a final
settlement, and in its settlement he was charged with certain debts
existing in favor of the decedent against a party in the State of
Pennsylvania. And the surrogate held him to be liable for the
amount of the indebtedness, even though the debtor himself still
remained solvent and capable of being obliged to pay by legal proceed-
ings, and the Court of Errors, upon a final appeal, approved of this.
decision. That case differed from the present in the essential
circumstance that the settlement there was final, while here it was.
to determine no more in this respect than what should be passed
over by the appellant to his successor in office. There the right or
authority of the personal representative to proceed was terminated
by the decree, while here it has necessarily been continued by invest-
ing the same power in the receiver succeeding the appellant, and also
since then in still another receiver who has been appointed in this
action. Here the ability remained to enforce and collect these debts.
by legal proceedings. In *Lowson* v. *Copeland* (2 Brown's Ch. C., 156).

the trustee was ordered to pay over, in favor of a next of kin, the amount of a bond he had failed to collect. The exigencies of the case seemed to require the making of that order. And no successor of that trustee was appointed, taking the management of the estate out of his hands, but he was left at liberty still to collect the amount of the bond he was ordered by the court to pay over. While in the present case the authority of the appellant as receiver was terminated, and he had no further control, either by way of possession or the right of enforcement, over the assets of this estate. These distinguishing circumstances exempt the present case from the rule that was required to be followed by the necessities of these authorities, for ample protection will be secured to the creditors of this estate by presenting their debts to the receiver still in charge of it, and requiring payment to be made by him. And to provide himself with the means of making such payment, under the authority of the court, he will be entitled to appropriate the assets in his hands to this object. So, in like manner, he will be at liberty to take legal measures for the collection of the debts, on account of which the appellant was ordered to pay these creditors, and in that manner to obtain the means of making payment. In fact the entire estate is now in the hands of the present receiver, and as the successor in office of the other two, the duty is incumbent upon him of collecting the debts and providing the means for the payment of these creditors.

This, however, will not exonerate the appellant from liability, if, by reason of his inattention and carelessness, or mismanagement, the ability to collect these several debts has been either lost or impaired. For, so far as the estate may have sustained injury thereby, he will be accountable to the present receiver to the extent of that injury, and legally liable to make compensation for the loss resulting from his inattention and neglect. The same liability will also attach for any depreciation in the value of the leasehold interest, or of the Westchester county mortgage, if either or both shall have been reduced in value by the inattention or misconduct of the appellant. But the regular proceeding will be not to direct the appellant to pay over the amount that may be found due from him, in this manner to the creditors, but it will be to pay over the amount to his successor in office. It is to him that he has become accountable, inas-

much as the latter has been placed in his own relation to the creditors who are seeking payment out of this estate of the debts owing to them.

The court has denied compensation to the attorney and counsel for the services rendered by him, on account of his employment by the receiver being unlawful and improper. But while he may have been delinquent in the advice given by him to the receiver, and induced him to neglect proceeding, or to take measures which should have been adopted by him to secure the possession of the personal estate of the testator, there were services performed by him in litigations to which the receiver was a party, the fidelity and sufficiency of which have not been questioned nor impeached. And for these services he ought to be compensated, subject to any loss that his own professional conduct may have produced by way of inducing carelessness, negligence or inactivity on the part of the receiver. For the services which were necessary or valuable to the receiver, and performed by the attorney with the usual fidelity and ability of counsel he ought to be compensated, but the compensation should not be made without proof of the nature and value of the services rendered. The evidence before tht referee was altogether too general, which was given to prove the services rendered, as well as their value. Still, as the case was made to appear, he was entitled to be allowed something for the professional services rendered by him, but the allowance should not be made upon the scale which is not uncommon in the case of receivers, that they may pay with great liberality, because they are not using their own property or money to make such payments. This has become, by far, too common a criterion to be supported or allowed to be followed by the courts. What the attorney and counsel should receive is a fair remuneration for the useful services performed by him, and in no manner influenced by or connected with his relations with Robert C. Clapp, for whom he was at the same time professionally acting. This will in no view include compensation for services performed in resisting the motion to discontinue the action, and for which the counsel had made a charge of $650. The referee was right in excluding that charge, and the order from which the appeal has been brought confirmed that disposition. This subject should be considered closed in the litigation and excluded from all further consideration by the referee.

The order should be so far reversed as to direct the referee to take further proof concerning the actual value of the services of the attorney and counsel, so far as they were essential to the estate and uninfluenced by the relations of the attorney and counsel with Robert C. Clapp ; and also to show what loss the estate sustained by the failure of the receiver to report to the court the offers made for the purchase of the leasehold estate, for his neglect to proceed with the enforcement or collection of the testator's claim against the Westchester property, and for the failure of the receiver to obtain the personal estate in the hands or possession of one or both of the executors, and whether any, and if so, what loss or injury has been sustained by the receiver's neglect to proceed to obtain liberty and to proceed against Robert C. Clapp for the collection of the indebtedness owing by him, and that owing by the counsel for the board of himself and his family, and by the widow and children of the testator, and from the failure and omission of the receiver to report to the court as he was required to do by its rules and practice, and to take any proof offered by the receiver pertinent to his right to commissions. And he should also notify any creditors there may be of the testator himself to appear upon the hearing and become parties to the proceeding. His report should be made and filed without any unnecessary delay and with all practicable speed. The costs and disbursements of this appeal should be left subject to the final order to be made upon the referee's report.

Brady, J., concurred.

Order modified as directed in opinion ; costs and disbursements of appeal to be left subject to the final order to be made on referee's report.