GEORGE HEIDENBLUTH *et al.*

*v.*

RAYMOND H. RUDOLPH *et al.*

*Filed at Ottawa October 29, 1894.*

1. MECHANIC'S LIENS—*contractor must act in good faith.* One seeking a mechanic's lien for work or material must act in good faith towards all persons interested in the property. An act which would make it inequitable to enforce his lien may operate as an estoppel in equity.

2. SAME—*claim not filed within four months.* A claim not filed in the office of the circuit clerk within four months from the time payment became due, as required by statute, is properly disallowed.

3. FRAUD—*may result when not intended.* Where a party acts falsely, and his acts in fact constitute a fraud upon the other party, it is immaterial whether the particular injury inflicted was intended or not.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. OLIVER H. HORTON, Judge, presiding.

Mr. LYNDEN EVANS, and Mr. FREDERICK ARND, for the appellants Heidenbluth Bros. and Bloedner & Co.

Messrs. VOCKE & HEALY, Mr. LYNDEN EVANS, and Mr. JOHN J. HEALY, for the appellant Charles Manske:

In a case where both parties are *in delicto* concurring in an illegal act, it does not always follow that they stand *in pari delicto*, for there may be, and often are, very different degrees of guilt. Story's Eq. Jur. sec. 300; *Baehr* v. *Wolf*, 59 Ill. 450; *White* v. *Bank*, 22 Pick. 181; *Tracey* v. *Talmage*, 14 N. Y. 162; *Quirk* v. *Thomas*, 6 Mich. 111; 1 Smith's Leading Cases, 708.

Mr. FREDERICK. A. WILLOUGHBY, and Mr. EDGAR L. HANCE, for the appellees.

Mr. CHIEF JUSTICE WILKIN delivered the opinion of the court:

In December, 1890, Samuel Kerr held title to eleven lots for himself, Alfred E. Barr and two others. He made a parol agreement with Raymond H. Rudolph to sell him this property for $13,750. Rudolph was to re-divide the eleven lots into eight, and build a house on each to cost about $4200. Kerr was not to make conveyance of the lots to Rudolph until the latter had made satisfactory progress in building the houses, and had paid $10,000 towards their construction. Rudolph was then to execute a trust deed on each of the eight lots to secure the payment of a note of $3000, and Kerr was to negotiate the sale of the notes, aggregating $24,000, retain out of the proceeds the purchase price of the lots and three per cent commission on the amount of the loan for procuring the same, and pay the remainder toward the cost of the eight buildings. Rudolph made contracts for the erection of the houses, and the contractors commenced the work. George and Frank Heidenbluth, partners as Heidenbluth Bros., entered into a contract in writing to do a part of the work, the consideration expressed in the written contract being about $4000 in excess of the amount actually agreed to be paid for the work, and at the same time they gave Rudolph a receipt for that excess as for so much cash received on the contract. Charles Manske entered into a contract for another part of the buildings, in which the consideration expressed was $1000 in excess of the actual price agreed to be paid, and Manske gave to Rudolph a receipt for the excess as for so much cash received on the contract. Other contracts were made, some of which stated the true consideration and some a false consideration. After some progress had been made on the buildings Rudolph used these receipts given upon the contracts, with the consideration falsely stated, to convince Kerr that he had made

large advances on the building contracts, and Kerr then delivered to Rudolph the deed to the lots, took his trust deeds, borrowed the $24,000 on them, retained the purchase money and the commission for procuring the loan, and paid out more than the remainder upon the buildings. Before the buildings were completed the fraud was discovered, and Kerr demanded that Rudolph convey the lots to Barr, which, he says, was for the protection of the noteholders and to prevent judgments against Rudolph from becoming liens upon the lots. After the lots were conveyed to Barr, Heidenbluth Bros. filed a bill to establish a mechanic's lien for materials furnished and work done, but amended their bill and sought to establish an equitable lien on the lots superior to the lien of the trust deeds. Charles Manske filed an intervening petition to establish a mechanic's lien claimed by him for work done and material furnished. Gustav Bloedner and Arthur Rehwolt, partners as Bloedner & Co., were the architects employed by Rudolph to plan and superintend the construction of the buildings. They also filed an intervening petition to have a lien declared for the amount claimed to be due them for services as architects. Other petitions were also filed. The demand in all the bills was, that the lien claimed should be declared to be a prior lien to the lien of the trust deeds. Cross-bills were also filed by parties made defendants, for the adjustment of the various equities claimed in the same premises. Liens were allowed as to several complainants, but were denied as to the complainants named above. They appealed to the Appellate Court, where the decree of the circuit court was affirmed, and now bring the case here by appeal from the judgment of the Appellate Court.

It seems fully established by the proofs that Kerr required that before he should advance money from ·the proceeds of the notes secured by the trust deeds, Rudolph should pay $10,000 toward the construction of the buildings. Rudolph represented to Kerr that he had made the

advances required of him, and produced the receipts he had taken from the contractors for the excess above the real contract price, to induce Kerr to believe that he (Rudolph) had in fact paid the amount claimed. It is insisted that Heidenbluth Bros. and Manske did not intend, in giving the false receipts, to deceive Kerr, or commit a fraud upon him or the holders of the notes now outstanding. Nevertheless they permitted false amounts to be stated in their contracts, and gave false receipts, which were used to deceive Kerr and the persons who loaned the money on the trust deeds. They also admitted in their testimony that they understood the receipts and false contracts were to be used to aid in procuring larger loans than could be obtained on the lots if the contract price of the buildings was truly stated. Their acts in fact constituted a fraud upon Kerr and the lenders of the money, and so far as their right of recovery in a court of equity is concerned, it is immaterial whether they intended the injury inflicted or not. Whoever seeks aid in a court of equity must come with clean hands. It is clear, that to give the contractors who gave the false receipts a lien prior to the liens of the noteholders, would place the noteholders in a position for which they were not themselves responsible, and in which they would not have been placed but for the false representations, which were given credence and made effective by the false receipts of these appellants, Heidenbluth Bros. and Manske. Their false receipts furnished the proof of advances by Rudolph upon which the loans were made. Without the proof furnished by these receipts the loans would not have been made. If not an intended fraud, it was in fact such a fraud upon the parties in interest as to estop the complainants who participated therein in their demand for a lien superior to the liens of the noteholders. And this applies as well to the claim for a mechanic's lien as to the claim for an equitable lien. A

contractor, in order to maintain his mechanic's lien for work done or material furnished, must act in good faith towards all persons interested in the property involved, and an act on his part which would make it unjust and inequitable to enforce his lien may operate as an estoppel to its enforcement in a court of equity. It is unreasonable that a man would sell property and take a trust deed upon it to secure an amount largely in excess of the value of the land, without any improvements having been made and paid for by the purchaser. Kerr manifestly intended that before his clients should invest any money in the property above the selling price of the lots, there should be substantial improvements made on it, paid for by the purchaser, Rudolph. If Rudolph had invested $10,000 in such improvements, it could have been reasonably considered that he had the means of protecting the money advanced, and that there was no immediate danger of loss of the property by mechanic's liens or other claims for the buildings. Even if the expression of the false amounts in the contracts and the false receipts were not intended as a fraud upon Kerr or the holders of the notes given by Rudolph, still they constituted such a fraud, in fact, upon the parties in interest as to estop Heidenbluth Bros. and Manske from now enforcing their claims as liens prior to the lien of the trust deeds securing the notes.

The statute requires that, in order to enforce a mechanic's lien against other creditors, incumbrancers or purchasers, a statement of the claim shall be filed in the office of the circuit clerk within four months from the time the last payment became due. (Rev. Stat. chap. 82, sec. 28.) In respect to the claim of Bloedner & Co. there is a controversy as to whether the last work was done and the payment due August 15 or August 25. The statement filed with the clerk specifies August 15, but it is claimed by counsel for Bloedner & Co. that this is a cleri-

cal error, and should be August 25. We do not find it stated in the record when this statement was filed, but it appears to have been sworn to on November 24, and we will presume it was not filed prior to that time. It follows that if the work was done and payment was due on August 15, the statement was not filed within four months from the time payment became due. There is no evidence that the date August 15 is a clerical error, and the testimony of the architects themselves does not establish the 25th as the date the payment became due. We are satisfied, after an examination of all the evidence on that question, that the finding of the court upon this point is as favorable to the appellants as the evidence would justify.

We see no reason for interfering with the judgment of the Appellate Court, and it is accordingly affirmed.

*Judgment affirmed.*