The Link Belt Machinery Company

*v.*

George R. H. Hughes.

*Opinion filed February 21, 1902—Rehearing denied April 5, 1902.*

1. Receivers—*one procuring receiver by asserting unjust claim is liable for costs of receivership.* If a receivership is procured under the assertion of an unjust and wrongful claim, as finally found by the court, the costs of the receivership may be taxed against the complainant so procuring the appointment of the receiver.

2. Same—*when party procuring receiver is liable for rent of premises.* One who wrongfully procures the appointment of a receiver and induces the court to order the receiver to take possession of premises and pay rent therefor, and who greatly prolongs the receivership and the receiver's possession of the property by litigating the owner's claim of priority for the rent, is liable for the unpaid balance of rent after receiver has exhausted the funds in his hands.

3. Same—*when court may order payment of the balance of rent in receivership.* If a receiver who has been improvidently appointed and ordered to take possession of property and pay rent therefor, is discharged upon his showing that he Has paid over all the funds in his hands to the owner in payment of rent, leaving a balance for rent still due, the court may, upon petition by the owner of the property in the same suit, enter an order requiring the payment of such balance by the complainant who wrongfully procured the receivership, without vacating prior proceedings or compelling the owner to resort to his remedy at law.

*Hughes* v. *Link Belt Machinery Co.* 95 Ill. App. 323, affirmed.

Appeal from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. A. H. Chetlain, Judge, presiding.

This is an appeal from a judgment of the Appellate Court for the First District reversing a decree of the superior court of Cook county.

The same parties were before this court in *Link Belt Machinery Co.* v. *Hughes*, 174 Ill. 155, where a full statement of the case is given up to the time of that appeal. It was there found that appellee was entitled to the sum of $3774.38 for rent due under his lease to the Standard Eggette Coal Company, to be paid by the receiver of said company. The receiver had but $2138 in his hands, which amount he paid the appellee, leaving a balance due of $1636.38. On showing made to the superior court that he had disposed of all of the property of the eggette company and distributed the funds in his hands according to the order of the court, the receiver was discharged. Appellee then filed his petition in the same suit, charging appellant with having fraudulently and collusively procured the appointment of said receiver of the eggette company for its own purposes and emolument and to hinder and delay other creditors, and charging that the appellant's creditor's bill was not filed for the purpose of collecting its judgment, but because the appellant, being then the owner of some $6000 or $7000 of the capital stock of the eggette company, desired to experiment with a patented process of manufacturing artificial coal, believing "there were millions in it," and to that end invoked the aid of the superior court with the hope of conducting the speculation on appellee's premises, and virtually at his expense, without risk to its own treasury. Other allegations of the petition are, that there was no necessity for a receivership in order to collect appellant's judgment, as there was ample personal property of the eggette company to satisfy appellant's execution; that appellant's treasurer was also treasurer of the eggette company and was fully acquainted with its assets; that the issuing of the execution on appellant's judgment against the eggette company, return of same unsatisfied, filing

of creditor's bill and appointment of receiver were all
done on the same day and by attorneys having offices
and rooms together, and all by the procurement of ap-
pellant, with the connivance and assent of the eggette
company; that the filing by appellant of its creditor's
bill and the carrying on of the proceedings in court were
a mere sham and pretense, a cover for a speculation by
appellant and an abuse of the process and machinery of
a court of equity; that the receiver was appointed at the
request of appellant and upon the faith of averments in
its bill which were untrue; that appellant, by reason of
the premises, became liable to appellee for the rental of
the property occupied by the eggette company for the
whole time the same was occupied by the receiver. Ap-
pellee asked for an order in the case directing appellant
to pay him the balance due on his rent, with interest.
Appellant in its answer denied all charges of fraud and
collusion, of speculation and abuse of process, but admit-
ted that its treasurer was also treasurer of the eggette
company and knew of its assets. On a hearing appellee's
petition was dismissed for want of equity, from which
decree appellee appealed to the Appellate Court for the
First District, which court, upon a rehearing, reversed
the decree and remanded the cause, with directions to
the trial court to enter a decree for appellee for $1636.38,
with interest. From this judgment of the Appellate Court
appellant has appealed to this court.

The evidence shows that before the bill of appellant
was filed the sheriff made no attempt to levy on any
property of the defendant in the execution, but only
made demand on its treasurer, who said that he had no
assets to which he could readily turn to satisfy the judg-
ment, and that the sheriff then immediately made his
return of *nulla bona;* that the bill was filed to head off
attachment proceedings that were threatened by other
creditors; that appellee, in December previous to the
filing of the creditor's bill, had levied a distress warrant

upon some of the machinery of the eggette company for back rent, and that some time thereafter the creditors of the eggette company made an arrangement by which they were paid the amount of their claims in stock of the company; that appellant had the largest claim, amounting to over $8000, and that stock was issued to its treasurer, as trustee, for such claim; that after the receiver was appointed appellant loaned him $1558.13 to carry on the business of the eggette company as such receiver, which amount has not been re-paid.

In appellant's creditor's bill it was alleged that the eggette company had reached a point where it could successfully and profitably manufacture artificial coal; that if its plant could be continued in operation its assets would become of great value, and that they could only be preserved and made valuable by continuing the business by or under the order of court, through a receiver; that the best interests of appellant and the eggette company and its creditors required that the business should be promptly re-opened under the order of court and its good will and business preserved, and that the plant and machinery should be turned over to a receiver, for use in further conducting said business. On this bill the receiver was appointed, and it was ordered that he continue the business of manufacturing artificial coal as then carried on by the defendant eggette company; that he employ suitable persons to conduct such business; that he purchase necessary materials and supplies and pay for them out of the funds coming into his hands; that he pay rent and other charges to conserve and preserve the property of the eggette company pending further orders of the court.

Herrick, Allen, Boyesen & Martin, for appellant.

H. S. & F. S. Osborne, and R. F. Pettibone, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

We are of the opinion that the facts contained in this record show that there was collusion between the appellant and the eggette company, and that the creditor's bill was filed to secure to appellant the control of the eggette company's plant through appellant's treasurer, who was appointed receiver and for whose benefit appellant advanced a large sum of money, trusting for re-payment to his success in managing the experiment it had entered upon with the eggette company's property. The effect of the whole proceeding was to hinder other creditors from asserting their rights at law, and when appellee applied to the lower court for leave to assert his rights at law his petition was denied.   Although no actual fraud may have been contemplated by appellant, yet as it had not exhausted its legal remedy to satisfy its judgment at law, no *bona fide* attempt to collect its debt by execution against the property of the eggette company having been made, (*Durand & Co.* v. *Gray,* 129 Ill. 9; *Stirlen* v. *Jewett,* 165 id. 410;) and as the creditor's bill was in reality filed for the purpose of getting control of the plant of the eggette company and shielding it from its creditors, the acts of appellant operated as a fraud on appellee, and it is immaterial whether appellant intended to injure appellee or not.   (*Heidenbluth* v. *Rudolph,* 152 Ill. 316; *Phillips* v. *Kesterson,* 154 id. 572; *Commercial Loan Ass.* v. *Trevette,* 160 id. 390.)   Where the receivership is procured under the assertion of an unjust and wrongful claim, as finally found by the court, the costs of the receivership may be taxed against the complainant procuring the appointment of such receiver. In *Highley* v. *Deane,* 168 Ill. 266, the complainant was ordered to pay the costs of the proceeding and costs and expenses of the receiver.   In *McAnrow* v. *Martin,* 183 Ill. 467, it was said that when the appointment of the receiver is without authority of law the court should order the complainant in the suit to pay the receiver's charges

and disbursements as a part of the costs in the case. In case of the illegality of the appointment of the receiver, and where his compensation is to be paid by the complainant who obtains such appointment, the amount of the receiver's compensation should be taxed against the complainant, the unsuccessful party in the cause. High on Receivers, (3d ed.) sec. 796; *Radford* v. *Folsom,* 55 Iowa, 276; *Highley* v. *Deane, supra.*

We are of the opinion that appellant is liable to appellee for the balance remaining unpaid of his rent which accrued during the receivership, as the receiver was ordered by the court to take possession of appellee's property and pay rent for it. If the receiver had actually paid the rent he would be entitled to recover it from appellant as part of his charges and disbursements. Besides, appellant greatly prolonged the receivership and the possession of appellee's property by the receiver by litigating appellee's claim of priority in the payment of his rent.

But it is contended that appellee is estopped from asserting any further claim for rent because he participated in the proceeds of the receivership and virtually assented to the proceedings. Appellee came into the case as an intervenor who owned the property occupied by the receiver, alleging in his petition fraud and collusion between appellant and the eggette company, and asking leave to proceed at law for the collection of the rent for such property and to distrain therefor, which petition appellant opposed, and it was denied and he was relegated to a lien upon the funds coming into the hands of the receiver. In the order denying his petition it was recited that "said Hughes, without waiving any of his rights against said company or said receiver under the lease mentioned in his petition or accruing to him by virtue of the acts of the receiver, or which are his by virtue of any matter, cause or thing," consented to a certain order of the court then made. In the former case

between the same parties (174 Ill. 155,) an effort was made by appellant to have the proceeds of the receivership prorated, and this court expressly held that appellee's lien was prior to all others. Appellee has throughout insisted on the priority of his claim, and has been compelled to appeal to this court to have such priority recognized. He cannot be held, under all the circumstances in this case, to have waived or forfeited any of his rights in the case, he never having in any manner consented to share with others but always insisted on his priority.

There still remains the question whether appellee can recover his rent in this proceeding. It is urged that the receivership was never actually vacated and that appellee took all the proceeds, and that, as far as this proceeding is concerned, he has exhausted his remedy. A court of equity having by its receiver taken possession of appellee's property, and having by its orders taken his rights under its protection, is bound to protect them without driving him to a suit at law to enforce such rights. It is a familiar principle that a court of equity having once taken jurisdiction of a cause will retain such jurisdiction to administer full justice to all parties, even if the relief granted could be obtained at law. The appointment of the receiver having been improvidently and illegally made at the instance of appellant, and nothing more remaining to be done than to compel payment of the balance of the rent charge incurred by the receiver, we see no reason why the necessary order may not be made and the court do full justice in the matter without vacating prior proceedings. The only purpose of the petition is to compel payment of the balance of the rent for which appellant has, by its wrongful act in the premises, become liable.

The judgment of the Appellate Court is right, and it will be affirmed.                          *Judgment affirmed.*