Bissell, J.
The facts remove this case largely from the region of dispute and disagreement which generally characterize the decisions concerning the rights of holders of mortgages on chattels. The date, record, and validity of the Harrelson mortgage were either conceded or established, .and the3r gave to the holder of that security an unquestionable and prior lien on the property, unless it was subsequently lost. The mortgage was executed on the 19th day of November, 1888, and recorded in the proper office. It *461 was given to secure an indebtedness about which there is no dispute. The finding of the court that all the subsequent mortgagees had knowledge of the existence of this security is abundantly sustained by the record. It only remains to ascertain the legal status of the subsequent lienors. Their position is sharply defined and clearly outlined by the authorities. Cassidy and Lee, who took their security on the 21st day of November, 1888, received it during the life of the Harrelson mortgage, and with full knowledge of its existence. In determining their rights no consideration need to be given to the question of diligence on Harrelson’s part, in taking possession of the property. Since they took their security during the life of the prior mortgage, and with full knowledge of it, they took subject to its lien, and acquired no other or greater rights in the property itself than were possessed by the mortgagor. They were not bona fide purchasers for value, and the mortgage remained valid and binding as against them, and they took subject to its provisions, and acquired only the right of redemption as it inured to the mortgagor. These circumstances dispose of the claim of the intervenors Cassidy and Lee, and as against them the adjudication, that Harrelson had the right of possession, was clearly accurate. Arnold v. Stock, 81 Ill. 407; Cunningham v. The H. O. Nelson Mfg. Co., 17 Brad. 510; The National Bank etc. v. Sprague, 21 N. J. E. 580.
The other mortgages, which were the subjects of the different petitions of intervention, were given at various dates between the 6th of June and the 10th of July, and after the note secured by the Harrelson mortgage had matured. One of the principal contentions on the trial and on the appeal was based on the delay on the part of Harrelson to take possession of the property subsequent to the maturity of his mortgage. Very considerable evidence was introduced on this subject, and he made a strong attempt to show that he had initiated proceedings to get control of the property late in May, and just before the note became due. In the view which the court takes of the law governing the *462 case, slight consideration need be given to either of these matters. It is undoubtedly true that the evidence which Harrelson offered to show, the attempt on his part to obtain possession late in May, ought not to have been received, and that it could not have been made the basis of a judgment in his favor. It was in flat contradiction to the averments of his complaint, which stated that the defendant Smith was in possession when he commenced the suit on the 7th of August, more than two months afterwards. He could not, under the well settled rules of pleading, be permitted to make proof against his case as he had laid it. The plaintiffs in error, however, were not harmed by this proceeding, since the court found the fact the other way, and it is not entirely clear that the question is well saved by the record. It is equally true that all the evidence, as well as the finding of the court on the subject of Harrelson’s diligence in obtaining possession of the property after the maturity of his paper, could be eliminated from the record and the judgment still stand. The intervenors are in no position to raise this question of diligence. Whatever may be the general rule requiring the mortgagee, upon the maturity of his paper, to be diligent in acquiring possession of the property if he desires to prevent the accretion of rights by creditors and bona fide purchasers for value, he is under no such obligation as against subsequent lienors who have taken their security with no other consideration passing between the parties at the time of its execution than the pre-existing debt which the instrument is designed to protect. This question has received exhaustive consideration by the supreme court of the United States, and, in an opinion which reviews the authorities generally, they declare the law to be that the holders of these subsequent securities hold the goods open to “ the same equities and exceptions as to title ” as could be asserted against them if they were in the hands of the mortgagor. It is laid down as a general principle, that to bring the holder of the security within the law which defines the rights of a creditor, or a purchaser for a valuable consideration, there *463 must be some new consideration moving between the parties, and not merely a new security given for an old debt. Peoples Saving Bank v. Bates, 120 U. S. 556; De Lancey v. Stearns, 66 N. Y. 157; Jones v. Graham, 77 N. Y. 628; Atchison v. Graham, 14 Colo. 217; McKee et al. v. The Bassick Mining Co., 8 Colo. 392; Gerow v. Castello, 11 Colo. 560; Tiffany v. Warren et al., 37 Barb. 571; Boyd v. Beck, 29 Ala. 704; Paine, Kendall & Co. et al. v. Mason et al., 7 Ohio St. 198.
It is quite probable that the decisions in this state have gone to the limit of the most advanced authorities in defining the rights and duties of the parties to such instruments. The cases of Knox v. McFarren, 4 Colo. 586, and Merchants Bank v. McClellan, 9 Colo. 608, which are relied on by the plaintiffs in error, are not in conflict with the rule here announced. It is quite true that a pre-existing debt is, under the law of this state, a good consideration for the transfer of property, and likewise may be a good consideration for a lien upon chattels. But neither of the cases referred to call for an expression of the limitation here applied to the doctrine, and rendered necessary by the proof, and it will not be assumed that the court, in stating a general principle, necessarily intended to exclude exceptions which are so well supported by the current of eminent authority.
The decision in Brereton v. Bennett, 15 Colo. 254, does not antagonize the present conclusion. The supreme court has undoubtedly held, following the line of the Illinois authorities, that as against either creditors or Iona fide purchasers for value, a matured mortgage is fraudulent per se unless the rights thereby acquired have been asserted by the assumption of possession of the property. In the light of this principle what the court said in that case,—“ whatever may have been his rights had he acted promptly, they were forfeited by this delay, and the mortgage became, in law, fraudulent as to other mortgage creditors,” would undoubtedly be true in the case of a contest between two mortgagees where the subsequent mortgage was based upon a new con *464 sideration, and given after the maturity of the original mortgage, and without knowledge of its existence, on property in possession of the mortgagor. And the quotation upon which so much reliance was placed was undoubtedly uttered by the court without reference to particular facts resembling those presented by this controversy. Brereton’s original mortgage was, by the acts and evident intention of the parties, superseded by a new note and another securit}'- executed in place of that made in June. Bennett did not take his mortgage during the life of the substituted instrument, nor for an antecedent debt. He took without notice of that lien. He was a Iona fide purchaser for a valuable consideration under all the authorities. These questions, therefore, of notice and of diligence, as presented by the present record, were not considered by the court, and the phase now under discussion was not before them for decision. It will not therefore be assumed that the general statement which is quoted was intended to decide the rights of a mortgagor who has acquired his security during the life of another instrument, which the holder has a present right to enforce, and with knowledge of its existence or subsequent to its maturity, and as a security for a pre-existing debt. If the record or the decision could be fairly said by either phraseology or intendment to cover the question here decided, it would be the duty of this court to follow it, and its binding force would be recognized. But inasmuch as that case did not involve the question herein decided, and there is nothing in the language of it which necessarily controls the determination of this element of the proposition, we have no hesitancy in reaching a conclusion borne out by such eminent authority.
But two other matters remain to be considered in order to dispose of all the questions which need be determined on this hearing.
It seems to be contended by the plaintiffs in error that the court erred in dismissing the petitions of intervention. The argument is, that since the intervenors were in any event mortgagees, and possessed of some rights as against the origi *465 nal defendant Smith, and might under some circumstances have a claim upon any fund resulting from the disposition of the mortgaged property, they were entitled to a judgment upon these several questions. 'According to the view which the court takes of the rights of the parties undér these various securities, this cannot be conceded. Whatever rights the intervenors had were those of second or subsequent mortgagees of personal property after the title thereto had by default become vested in the prior lienors. This right is entirely analogous to that enjoyed by the mortgagor, which is simply the right of redemption, or possibly under some circumstances the right to enforce a claim against any surplus, or to attack the sale because of some fraud' or wrong committed in the enforcement of the prior mortagees’rights. Without attempting to define or express all the rights which, as second lienors they may have, it is enough to say that they are not entitled, in this action, to a judgment against Smith on their notes, nor to an adjudication as against Harrelson concerning the possession of the property. Under the allegations of the various petitions the judgment of dismissal was, under the law, a proper finding and entry.
The plaintiffs in error insist that the costs of the receivership should not be taxed against them. It appears that upon the presentation of the petitions of intervention, the intervenors nmde application to the court for the appointment of a receiver to take charge of the property involved in the contest for possession. The order was made and a receiver was appointed, but the order appears to have been based on a consent filed. This view does not exclude the idea that the receiver was appointed at the instance of the intervenors, who must be held responsible for the costs necessarily accruing from this proceeding. It is probably true that there are’ many items of expense which would be incurred in the care and custody of the cattle, in the shape of ordinary expenses incident to the running of a herd, which could not legitimately be taken as a part of the cost of the receivership. Under the circumstances the only costs which should be *466 taxed against the intervenors because of the application are those which are the legitimate arid unavoidable incidents to the appointment. The fees allowed the officer his necessary-disbursements ; and whatever are the usual and customary outlay of persons holding such a position, and caring for similar properties, are all that should be held to be included in such an order as- that entered. There is nothing however in the record to show what expenses were taxed as costs, nor whether the court committed any error in this particular. It is quite possible that final action may not have been taken, and it will not be assumed in the absence of a showing that any items were included in the costs which could not be legitimately embraced in the taxation, nor that the court exceeded its power, or exercised' an unwarranted and illegal discretion in the matter. The general order taxing the costs was undoubtedly correct. There is nothing in the form of the judgment complained of in respect of this matter which requires that the judgment should be- disturbed.
The court did not err in its findings of fact, or its conclusions of law, and entered the proper judgment thereon. ■ It must be affirmed.

Affirmed.