THE CITIZENS' COAL & COKE COMPANY v. STANLEY.

1. CHATTEL MORTGAGES.
Chattel mortgages, if they purport to cover stocks of goods and like-
wise reserve to the mortgagor the power of sale, are void as against
creditors and *bona fide* purchasers for value.

2. SAME—NOTICE.
The taking of a chattel mortgage which contains a specific exception of
a prior unrecorded mortgage is sufficient to charge the mortgagee
with notice of the contents thereof.

3. MEASURE OF DAMAGES.
In an action by a mortgagee for a conversion of the mortgaged chattels,
his recovery must be limited to the amount of his own claim.

*Appeal from the County Court of Arapahoe County.*

EARLY in December, 1892, the appellee Stanley bought
into a business which was then being carried on in the city
of Denver by W. F. Mitchell. It was a coal and feed busi-
ness. What of stock was possessed by the firm at the time
of its organization is not disclosed. As copartners, Stanley
and Mitchell carried on business until the later part of Jan-
uary, 1893, when, becoming mutually dissatisfied with the
situation, they dissolved. Mitchell bought Stanley out for
the agreed price of $215.35.. The odd money was paid in
cash. The remainder was not then liquidated. It is to be
fairly gathered from the record that the property subse-
quently mortgaged to Stanley was part of the firm assets.
Under the terms of the dissolution Mitchell was to pay Stan-
ley as soon as he could collect the outstanding bills. In this
he was unsuccessful. The cause is not evident. Shortly
after Stanley sold out he went down to the office of The
Citizens' Coal & Coke Company, the appellants, and stated
the dissolution. It would seem that quite a bill was owing
to that company, and, when they learned of the dissolution,
they immediately called on Mitchell to settle. He was unable
to do so, and they insisted on a mortgage as security. The

outcome of the negotiations was the execution and acknowl-
edgment, on the 3d of February, of a note for $200, due one
day after date, and a mortgage on certain personal property,
due at the same time, and containing the usual conditions
with regard to possession by the mortgagor and power of dis-
position.   On this fact much of the appellee's contention
hinges.   The form of the mortgage is somewhat peculiar.
It proceeds with eight items, each separately stated in lines
by themselves, and covering, speaking generally, the horse
and wagon and harness, scales and stove, and fork and
shovel, which constitute the subject-matter of this litigation.
After these six items, the mortgage contains apparently the
following two items, separately stated and on different lines:

I. "Stock on hand at time of expiration."

II. "Insurance on stock, etc., as per policy 373117, Union
Insurance Company."

The only occasion to state the form of the mortgage with
reference to these last two items is to enable us to make
plain in the opinion the form which·the argument takes.
After this note and mortgage had been made and given to
the company, Stanley insisted on being protected in his sale
to Mitchell.   Thereupon Mitchell made a mortgage to Stan-
ley on the first six items named in the Coal Company's mort-
gage, and delivered it to Stanley.   It was executed and
recorded on the 6th, and contained a specific reference to
the Coal Company's mortgage in this form:  "That the same
are free from all encumbrances except mortgage to The Citi-
zens' Coal & Coke Company."   The Coal Company's mort-
gage was not recorded until the 7th of February, a day after
the record of the Stanley instrument.   There was consider-
able controversy at the trial respecting the proper construc-
tion of the Coal Company's instrument; the dispute being
over the clause "stock on hand at the time of expiration."
The company attempted to prove, by way of aiding the inter-
pretation of the instrument, what occurred at the time the
paper was signed and acknowledged before the notary.
This evidence was excluded.   Both parties seem to have

taken alarm about the same time respecting the debt, and Stanley went up, as he states, to obtain possession. He did something in that direction, but it will not be necessary to state the facts about it, for the case will turn on another proposition. While he was there, the company's representatives came up and seized all the stuff, and, against Stanley's protest, loaded it into wagons and carried it off. Thereupon Stanley brought this suit against them to recover the value of the property. The note which he produced was for $200, and amounted, with its interest, at the time of the trial, to a few cents less than $208. He made proof of the value of the articles taken, which were covered by his security, and in accordance with that proof the court rendered a judgment against the company for $275 and costs. Therefrom the company appealed.

Mr. H. D. INGERSOLL and Mr. RALPH E. STEVENS, for appellant.

Mr. THOMAS B. STUART and Mr. CHARLES A. MURRAY, for appellee.

BISSELL, J., delivered the opinion of the court.

We regard the judgment as fundamentally erroneous. The difficulty experienced in the interpretation of the mortgage given to the company is very plain. If the instrument be so construed as to operate as a mortgage on the stock then owned and held by Mitchell, it would necessarily be invalid under our statute respecting chattel mortgages. By a long series of decisions in both the appellate courts, such instruments, if they purport to cover stocks of goods of any description, and likewise reserve to the mortgagor the power of sale, are fraudulent and void as against creditors or *bona fide* purchasers for value. This law is too well settled to require discussion. Two or three very ingenious arguments are advanced by the respective parties to support their dif-

ferent theories concerning the proper interpretation of the instrument. None of them seem to us to be necessarily correct, nor to accord with the probable purpose of the parties as it is evidenced by their agreement. As we view it, the mortgagor evidently intended to transfer to the company, as security for his debt, three different classes of items. The first was personal property, about the identity of which there can be no dispute. The last was an attempt,—whether it would have been successful in case of a fire we need not consider,—to transfer the insurance which was carried on the property as an additional security in case it was burned up. The other item covered the stock on hand. But the pivotal question still remains,—whether it covered or attempted to cover the stock from the date of its execution or from some other date. The equities are manifestly with the Coal & Coke Company, for it is fairly inferable from the evidence which Stanley himself gave that he was liable for at least a very considerable part of the debt due to the Coal Company. He sold out on the 24th day of January, and a good deal of the indebtedness was owing at that time. The exact amount, of course, is not made plain, since this question was not of importance to the issue, but it is enough, if the law justifies it, to subordinate his claims as a retiring partner to those of the general creditors. As we read the instrument, there was no evident intention on the part of the mortgagor to transfer or to incumber by the security the stock which he held when he executed it. Whether the parties proceeded with an apt prevision and understanding of the law in such matters, we are not able to apprehend, but to us it appears to have been the intention to cover whatever stock might be on hand when the mortgage should mature. Otherwise there is no sense in the last clause, and there is a want of connection between the two phrases. It is impossible to connect what relates to the stock on hand with the reference to the insurance policy. It is inconceivable that the parties should have intended to mortgage the stock from the date of the expiration of an instrument of

insurance, when the security itself matured in twenty-four hours after its execution. Neither can the policy be referred to for the purposes of description to ascertain what was intended to be covered by the antecedent provisions of the mortgage. They were plain, definite, and could not be aided by the policy. There is no connection between the two in the form in which they are written, and they lack both punctuation and the necessary conjunctions to warrant a joint construction of the two clauses. We thus disagree with both counsel respecting this matter. It is our conclusion that the mortgage on the stock took effect, if at all, only after the maturity of the instrument, when, by the terms of the security itself, the power of disposition by the mortgagor had entirely ceased. As is usual in that class of mortgages, the mortgagor retained the power to sell only during the life of the mortgage. If the stock which he owned at maturity could then be covered by the instrument as it was executed, it would be uncoupled with the power of disposition, which renders such instruments invalid as against creditors or *bona fide* purchasers. We do not undertake to determine whether such a security would be valid, nor what the rights of the parties or of third persons would be, if a conflict should arise between them over the stock owned at maturity. The appellee does not claim it, the mortgagor is making no contest, and no other creditor asserts any right to the stock. The subject-matter of this dispute is the property which is specifically described as the "horse and wagon, the scales and stove, and the fork and shovel." All we adjudge is that the instrument does not come within the purview of those decisions which adjudge a security invalid which covers a stock in trade and reserves to the mortgagor the power of disposition.

It cannot be legitimately contended that the security might, under some other circumstances than those disclosed by the record, attach to the stock of goods before the maturity of the note. The argument based on the provision of the mortgage which permits the holder to take possession when he regards his security as jeopardized or on levy of an attach-

ment is unsound. Whatever force is to be given to this claim as affecting goods actually covered by the mortgage, it cannot be invoked to invalidate a security otherwise good. It took effect as to the stock of goods only on its own maturity. Neither a levy nor a conclusion of insecurity would operate to mature the note, however great might be its effect on what was actually covered by specification, and as to which a right of seizure might accrue before the note was due.

Having reached this conclusion, the solution of this matter is a very simple one. When Stanley took his mortgage, he had absolute and specific notice of the outstanding security held by the Coal & Coke Company. It had matured when he received his mortgage, on the 6th of February, and the fact that it was not recorded does not affect its validity, nor deprive the company of the preferential rights which they enjoyed on the elder security. We attach no importance whatever to the conversation between Stanley and Mitchell about the company's mortgage, and the uncertainty of the information, according to Stanley's version, of his talk with Mitchell. It is sufficient that his security contained a specific exception of the mortgage to The Citizens' Coal & Coke Company. This was enough to put him on inquiry and charge him with notice of all the information which he could have procured if he had sought knowledge of the paper. He must be taken to have had notice of its contents, of what it covered, and of the rights of the company thereunder. The case is clearly brought, by all the matters appearing in its borders, within the decisions of this court in two cases. *Harbison v. Tufts*, 1 Colo. App. 140; *Cassidy et al. v. Harrelson*, 1 Colo. App. 458.

There is another matter which must be called to the attention of the parties, in the event of a future prosecution of this litigation. This concerns the judgment which was rendered. Stanley's total claim was $208, and yet he got judgment for $275. This he could not do, for even though he had the right to recover the value of the property by reason of the conversion by the company, his right would be limited

to the amount of his own claim.    This principle was settled by this court in a recent case.    *Cramer v. Marsh*, 5 Colo. App. 302.

There was some attempt at the close of the trial to introduce testimony of a conversation which occurred between Mitchell and the notary, or possibly between Mitchell, the notary and a representative of the company, respecting what was intended to be covered by the security.    This testimony was properly excluded.    Such evidence is not admissible. No evidence to contradict the terms of a mortgage can be introduced.    While parol testimony may be offered to identify the articles embraced, or to interpret the meaning and extent of the terms employed, it is a generally recognized principle that this evidence must be consistent with the description.    The offer as made was not brought within the exception to the rule, and it was properly excluded.

What has been said disposes of all necessary matters, and the judgment must be reversed.

*Reversed.*