BOSTON SAFE—DEPOSIT & TRUST CO. v. CHAMBERLAIN (two cases).

(Circuit Court of Appeals, Fourth Circuit. February 13, 1895.)

Nos. 90 and 104.

1. RECEIVERS—COMPENSATION.
     A receiver of a railroad 172 miles long, operated by him at a loss of $50,000 a year, the gross annual revenue being but $200,000, received as compensation $6,000 a year while operating the road, and was also compensated for services as receiver of the railroad system of which the road formed a minor part, and as special master to sell the road. *Held,* that for services rendered during seven months after such sale in winding up his receivership, he should not be allowed compensation at the same rate, but that a gross sum of $1,750 was sufficient.

2. SAME—COUNSEL FEES.
     The receiver's counsel, for services during the first eight months of the receivership, was allowed $4,000. During the subsequent two years his services were in great part advice and consultations with reference to the usual questions arising in a railroad receivership, and, though constant and frequent, not such as to prevent his attending to a general practice. *Held,* that compensation therefor should be by an annual allowance, rather than by an itemized account, and, under the circumstances, should not exceed $3,000 a year.

Appeals from the Circuit Court of the United States for the District of South Carolina.

These were suits by the Finance Company of Pennsylvania and others against the Charleston, Cincinnati & Chicago Railroad Company and others, and by the Boston Safe-Deposit & Trust Company against the same, for foreclosure of mortgages and the appointment of a receiver. Daniel H. Chamberlain was appointed receiver, and Augustine T. Smythe was appointed his counsel. On the set-

tlement of the affairs of the receivership, orders were made, fixing the amount of compensation allowed to the receiver and to his counsel. The Boston Safe-Deposit & Trust Company appealed from both orders.

J. P. K. Bryan, for appellant.
A. M. Lee, for appellee.

Before GOFF, Circuit Judge, and MORRIS and BRAWLEY, District Judges.

MORRIS, District Judge. These two appeals involve the reasonableness of the allowances made to the receiver and to his counsel in the matter of the receivership of the Charleston, Cincinnati & Chicago Railroad. The property consisted of 172 miles of railroad between Marion, in North Carolina, and Camden, in South Carolina, and was operated in connection with the South Carolina Railroad, of which Mr. Chamberlain was also the receiver under decree· of the same court. From the cases in the circuit courts of this circuit arising out of the foreclosure suits and the litigation with respect to both of these railway properties, facts are known to the judges who have heard the cases now under consideration which do not appear in the records; but we have not felt that we should attempt to divest ourselves of that knowledge in considering these appeals, which involve solely the reasonableness of the allowances made to the receiver and his counsel.

By the appeal in No. 104 are brought before us the objections of the trustee for the bondholders to the allowances to the receiver. Mr. Chamberlain succeeded the temporary receiver, and entered upon his duties about the 1st of March, 1891, and operated this railroad, in connection with the South Carolina Railroad, until he surrendered possession to the purchaser, October 1, 1893,—a period of two years and seven months. For his services during this period he was paid by order of the court at the rate of $6,000 a year. The property was·sold May 2, 1893, but, the purchaser not fully complying with the terms of sale, possession was retained until October 1, 1893, and the receiver's compensation continued until that date. Thereafter the receiver, upon the ground that he had been obliged from time to time to pay off the receiver's certificates and other obligations out of the moneys which had come to his hands as the special master appointed to make the sale, and because he had, for want of sufficient funds, been unable to close his accounts as receiver, petitioned the court to be allowed compensation at the same rate, viz. $500 per month for seven additional months, —being· the period from October 1, 1893, to May 8, 1894, the date of his· final discharge, and the exoneration of his sureties: It is this allowance of $500 per month for these seven months, amounting to $3,500, which the trustee of the bondholders contends was unreasonable, and has appealed from.

We think it should be taken into consideration that this railroad was but a minor part of a system operated by the same receiver, and that, although ably managed by him, its annual gross revenue

was but $200,000, and its deficit $50,000 a year. If the receiver had been insufficiently paid for his services while operating the road, there would be reason for increasing that compensation by a liberal allowance for such services as he was called upon to perform after surrendering the road and while settling up the receiver's obligations and his accounts; but it is known to the court that he was at the same time receiver of the South Carolina Railroad, and was appointed the special master to sell this railroad, for both of which services he was compensated. There are many reasons, we think, why his compensation for the period during which he was winding up the affairs of his receivership in this case, after the duties and responsibilities of his practical management had ceased, should be moderate. We are satisfied that a gross sum of $1,750 for his compensation after October 1, 1893, is sufficient, and that more is unreasonable.

By the appeal in No. 90 there is brought before us the allowances to the receiver's counsel. Upon the appointment of the receiver, A. T. Smythe, Esq., of the Charleston bar, was appointed his counsel. For professional services rendered by him to the receiver from March, 1891, to November, 1891, he was allowed $4,000. For services rendered from November, 1891, to March, 1893, a period of 16 months, the receiver's counsel filed an itemized account, and also an itemized account for services after March, 1893, up to December, 1893, a period of 8 months. For these services the receiver's counsel was allowed $9,000, making, with the $4,000 previously allowed, $13,000 allowed to the receiver's counsel during a period of 2 years and 7 months. An examination of the items of services shows that they were not for matters of large importance affecting the receiver or the property, but were in great part advice and consultations with reference to the usual questions arising in connection with a railroad receivership. The principal matters of consultation and advice were with regard to contested assessments of the railroad property for taxes, but in this matter several railroads in the state had joined together, and had employed special counsel to conduct the litigation growing out of it. The allowance of $4,000 for counsel fees during the first eight months of the receivership is not now questioned, and it may be presumed that during that period, at the commencement of his duties, the receiver had new questions and difficulties, which required more constantly the advice and services of counsel; but for the subsequent two years the items of service, although constant and frequent, disclose no such demand upon the time of counsel as would prevent his attending to the usual claims of a general practice. All the parties to the case were represented by counsel, and the duties of the receiver's counsel had reference solely to the receivership. For such services to a receiver, a fair and just method to compensate counsel is by an annual allowance, rather than attempt to value each item of service. We have been unable to escape the conclusion that, valued as such services usually are under similar circumstances, in connection with a railroad of minor importance, operated as part of a system, and not earning its running expenses, more

v.66F.no.6—54

than $3,000 a year for the receiver's counsel is unreasonable. In our opinion, a fair and just allowance should not exceed $6,000, in addition to the $4,000 already paid. We have not reached the conclusion that we must reduce these allowances without reluctance, for the reason that in such cases what is a fair compensation is so much a matter of judicial discretion; but we think it is important that the circuit courts of appeals should endeavor in their respective circuits to bring about as much uniformity in such allowances as the cases will admit of. Such services, under some peculiar circumstances, or by agreement of the parties before the court, or upon ex parte applications, have often been, in many courts of this country, so extravagantly compensated that we think there has been a tendency to establish a standard of compensation in matters connected with railroad foreclosures which is unreasonably liberal as compared with similar services in any other employment or with respect to any other subject-matter.

Decrees reversed, and proceedings remanded, with directions to modify the decree in No. 104 so as to award $1,750 to the receiver, and in No. 90 so as to award $6,000 to the receiver's counsel; each party to pay his own costs in this court, and one-half of the costs of printing the record.