32 143|
132 243|

HICKEY ET AL., PLAINTIFFS, A. P. HEINZE, APPELLANT, *v.* PARROT SILVER AND COPPER COMPANY AND THOS. McLAUGHLIN, RECEIVER, RESPONDENTS.

(No. 1,975.)

(Submitted October 22, 1904. Decided March 1, 1905.)

*Receivers—Compensation—Rules for Ascertaining—Expenses Incurred After Termination of Receivership—Allowance for Counsel Fees—Parties Liable.*

Receivers—Legally Appointed—Compensation.
1. Where a receiver is legally appointed, he is entitled to compensation for services actually rendered, although the order of appointment be vacated or reversed.

Receivers—Improperly Appointed—Liability for Compensation.
2. Where a receiver is improperly appointed, the party who procured his appointment is liable for his compensation.

Receivers—Reversal of Order Appointing—Consequences—Duties.
3. Whenever the order appointing a receiver is reversed, his authority is taken away, and it then becomes his duty immediately to render his final report and demand his formal discharge.

Receivers—Counsel—Contract of Employment—District Courts.
4. A receiver is entitled, as a matter of right, to the benefit of counsel, when the nature of the trust requires it; and, while he usually

selects his own counsel, he cannot make any contract of hiring or agreement for compensation that is binding upon the court as it is its function to determine both the necessity for counsel and the compensation to be allowed therefor.

Receivers—Compensation—How Determined.

5. In determining the compensation to be allowed a receiver, the circumstances and environments of the particular receivership should be considered.

Receivers—Compensation—Reasonableness.

6. While the receiver is entitled to reasonable compensation for the management of the property, the fact that he is employed by the court, and not by the owner of the property, does not entitle him to any greater compensation than that which would be reasonable if he had been employed by the owner.

Receivers—Compensation—Extra Duties—Giving Bond.

7. Where extra duties are required of a receiver, such as the giving of a bond or the employment of counsel, he is entitled to extra compensation, in addition to that to which he would be entitled merely for the management of the property.

Receivers—Compensation—How Fixed.

8. In fixing the compensation of a receiver, the considerations that should control the court are the value of the property in controversy, the practical benefits derived from the receiver's efforts, the time, labor, and skill needed or expended in the proper performance of his duties, and their fair value, measured by the common business standards, and the degree of activity, integrity, and dispatch with which the work of the receivership is conducted.

Receivers—Compensation—Percentage Basis.

9. *Obiter:* The percentage basis upon which to fix the compensation of a receiver is not always the equitable method.

Receivers—Duties—Books—Vouchers—Examination.

10. It is the duty of a receiver to transact his business in such a manner, and to keep his books and vouchers in such shape, that they may be ready for examination at any time.

Receivers—Counsel Fees—After Reversal of Order—Liability.

11. After an order appointing a receiver had been reversed on appeal, and more than a year after the termination of the receivership, the receiver and the defendant, without the consent of the party who had procured the appointment of the receiver, stipulated that the defendant's objections to the receiver's reports should be referred. *Held,* that the party who procured the appointment of the receiver was not liable for the fees of the attorneys representing the receiver on the reference.

Receivers—Negligence—Costs—Liability for Reimbursement.

12. Where costs have been incurred by the negligence of the receiver, he cannot, in equity, maintain a claim for reimbursement either out of the trust fund or from the party who caused his wrongful appointment.

Receivers—Reversal of Order—Compensation—Attorneys' Fees—Liability.

13. A receiver is not entitled to compensation or allowance for attorneys' fees for any new business transacted after the filing of the *remittitur* reversing the order of his appointment, the expense of the receivership having then terminated, so far as the same could be charged against the trust fund or the person who wrongfully caused the receiver's appointment.

Receivers—Attorneys' Fees—How Fixed—Evidence—Presumptions.

14.  Where the court has personal knowledge of the services rendered by attorneys for a receiver, it is not always necessary that it should hear evidence as to the amount which it should allow for attorneys' fees, as the court is presumed to know the value of attorneys' services, but such evidence may be admitted to inform the court what is just and reasonable under the circumstances.

*Appeal from District Court, Silver Bow County; Wm. Clancy, Judge.*

ACTION by Michael A. Hickey and others against the Parrot Silver and Copper Company. On motion of plaintiff, Arthur P. Heinze, Thomas McLaughlin was appointed receiver of the property involved in the litigation, and from an order fixing his compensation, and allowing him a certain amount for counsel fees, said Heinze appeals. Reversed.

*Messrs. Kirk & Clinton,* and *Mr. H. L. Maury,* for Respondent, Thos. McLaughlin, Receiver.

We take the position that as the receiver was wrongfully appointed upon the application of Arthur P. Heinze, that all the wrongs which flowed from his appointment must necessarily come back to Arthur P. Heinze as costs, the same as costs are taxed against any other unsuccessful litigant in any proceeding which he may institute, and it would be absurd to hold that the receiver after mining and disposing of something like $400,000 worth of ore, which involved large pay-rolls, large supply accounts consisting of numerous items, that even though the higher court should hold that his appointment was wrongful, that he should not be required to come into court and in a proper manner and in a judicial way settle up his accounts as such receiver. (*Welch* v. *Renshaw,* 14 Colo. App. 526, 59 Pac. 967.) The fees of the receiver may be allowed as costs, and taxed against the losing party upon the entry of final judgment in the action. (*State ex rel. Cornue* v. *Lindsay,* 24 Mont. 352, 61 Pac. 883; *Hutchinson* v. *Hampton,* 1 Mont. 39; *Ervin* v. *Collier,* 2 Mont. 605.)

The complainant, having had no right to the appointment of the receiver, is liable to the defendant for all the consequences of having had one appointed. The costs of the re-

ceivership, including the compensation of the receiver, must be paid by the complainant. (*Ephraim* v. *Pacific Bank,* 129 Cal. 589, 62 Pac. 177; *Welch* v. *Renshaw,* 14 Colo. App. 526, 59 Pac. 968; *Hutchinson* v. *Hampdon,* 1 Mont. 39; *Lockhart* v. *Gee,* 3 Tenn. Ch. 332; *Ervin* v. *Collier,* 2 Mont. 608.)

When a receiver has been appointed and the order is reversed on appeal, the receiver must turn over the money and property in his charge, and is not entitled to commission or compensation therefrom. (*Pittsfield Nat. Bank* v. *Bayne et al.,* 140 N. Y. 321, 35 N. E. 630; *Grant* v. *Los Angeles & P. Ry. Co.,* 116 Cal. 71, 47 Pac. 472, 474.)

The order in the case was reversed. The expenses of the receivership must be paid by the plaintiff when the appointment was wrongfully made. (Beach on Receivers, sec. 119; *Weston* v. *Watts,* 45 Hun (N. Y.), 219; *Richmond* v. *Irons,* 121 U. S. 27, 7 Sup. Ct. 788; *St. Louis etc. R. Co.* v. *Wear,* 135 Mo. 230, 36 S. W. 658; *People* v. *Jones,* 33 Mich. 303; *Verplanck* v. *Mercantile Ins. Co.,* 2 Paige, 438; *Highley* v. *Deane,* 168 Ill.. 266, 48 N. E. 50; *Ogden City* v. *Bear Lake etc. I. Co.,* 18 Utah, 279, 55 Pac. 385; *Willis* v. *Sharp,* 58 Hun, 608, 12 N. Y. Supp. 120; *French* v. *Gifford,* 31 Iowa, 428; *McAnrow* v. *Martin,* 183 Ill. 467, 56 N. E. 168.)

*Mr. A. J. Shores, Mr. C. F. Kelley, and Messrs. Forbis & Evans,* for Respondent, Parrot Silver and Copper Company.

Whatever allowances that have been made or may be made to the receiver in this action are properly taxable to the appellant, Arthur P. Heinze, who procured his appointment. (*Highley* v. *Deane,* 168 Ill. 266, 48 N. E. 50; *McAnrow* v. *Martin,* 183 Ill. 467, 56 N. E. 168; *Willis* v. *Sharp,* 58 Hun, 608, 12 N. Y. Supp. 120.) Where a receiver has been appointed and the order has been reversed on appeal, the receiver must turn over the money and property in his charge, and is not entitled to commission or compensation therefrom. (*Pittsfield Banks* v. *Bayne et al.,* 140 N. Y. 321, 35 N. E. 630.)

A receiver is entitled to have his accounts settled and a final order of discharge made. The party against whom the

appointment is made is entitled to make all legal objections to the accounts and to have the said accounts inquired into and settled in the manner prescribed by law, and whatever is done to effect this end is, of course, the natural sequence of the order of appointment.

*Mr. John J. McHatton,* and *Mr. Jas. M. Denny,* for Appellant.

It was the receiver's duty, not only to the trust, but to the appellant herein, upon whose petition he had been appointed, to have objections to his account disposed of at the earliest date possible, and while all matters to which such objections pertained were fresh and the evidence thereof easy of access, and any neglect so to do by the receiver renders him personally liable for any expenses which may be thus incurred. "If a receiver permits costs to accrue which he ought to have prevented, he will be required to pay such costs out of his own pocket." (High on Receivers, sec. 809.) "Where a receiver has been guilty of negligence or misconduct in the management of property committed to him, the court may reduce his compensation and may in addition impose a penalty in the shape of a further reduction on account of his mismanagement." (Am. & Eng. Ency. of Law, vol. 20, p. 179; Beach on Receivers, 758.) "Upon no principle can it be held that the party who procures his (a receiver's) appointment is by reason thereof responsible for the receiver's conduct or liable for any loss by reason of his misconduct." (Gluck & Becker on Receivers of Corporations, 2d ed., 415; *Kaiser* v. *Keller,* 21 Iowa, 95; *First Nat. Bank of Jersey City* v. *Kimball,* 42 N. J. Eq. 107, 6 Atl. 491.)

A counsel fee to be allowed to a receiver must be one rendered for the purpose of preserving the trust estate and beneficial to the trust estate, and not one rendered for the protection of the receiver irrespective and independent of the trust estate. (Gluck & Becker on Receivers of Corporations, 561, 563; *Platt* v. *Archer,* 13 Blatchf. 351, Fed. Cas. No. 11,214; *Utica Ins. Co.* v. *Lynch,* 2 Barb. Ch. 573.)

The court having refused to hear and consider evidence as to the professional skill and standing of the attorneys, or rather to permit cross-examination as to such skill and standing, committed reversible error.   "The amount of his professional business may be inquired into as tending to show his professional standing."   (*Phelps* v. *Hunt,* 40 Conn. 97.)   "Upon a *quantum meruit* for professional services, the professional standing of the attorney is a proper subject of inquiry."   (Weeks on Attorneys, 563.)   "In all cases the professional skill and standing of the person employed, his experience, the nature of the controversy in regard to the amount involved and character and nature of the question raised in the case, as well as the result, must all be taken into consideration in fixing the value of the services rendered."   (*Eggleston* v. *Boardman,* 27 Mich. 18, 15 Am. Rep. 153; *Stanton* v. *Embry,* 93 U. S. 548, 23 L. Ed. (U. S.) 985; Am. & Eng. Ency. of Law, vol. 1, p. 966.)

MR. COMMISSIONER POORMAN prepared the opinion for the court.

This is an appeal from a final judgment.   (*State ex rel. Heinze* v. *District Court,* 28 Mont. 227, 72 Pac. 613.)   It is alleged in the complaint filed in the principal action: That the owners of an undivided thirty-one thirty-sixths of the Nipper lode claim leased their interest to F. Augustus Heinze, who was also given an option to purchase the property.   The lessee then sublet the premises to Arthur P. Heinze, who entered into the possession thereof, and at the time the action was commenced, in August, 1899, was working the same. That the Parrot Silver and Copper Mining Company entered the Nipper ground through underground workings, and was extracting and carrying away ores from beneath the surface of the Nipper claim.   The complaint asks that the title to the property be quieted, and that the defendant Parrot company be enjoined from entering upon, mining or extracting any ore from, or breaking any rock within or on, the Nipper claim.

The Parrot company, in its answer, admitted that it was extracting ores from a vein beneath the surface of the Nipper

claim, but alleged that such vein had its apex within the Little Mina lode claim, lying north of the Nipper claim, and which was owned by the defendant company. All of the owners of this thirty-one thirty-sixths undivided interest in the Nipper claim, together with the lessee, F. Augustus Heinze, and the sublessee, Arthur P. Heinze, were plaintiffs in this action.

Afterward, about March 3, 1900, the sublessee, Arthur P. Heinze, filed an application for the appointment of a receiver to take possession of and operate that portion of the Nipper claim in dispute; alleging himself to be especially aggrieved, for the reason that his lease thereon expired in July, 1901, and that he desired to have the property operated during the continuance of his lease. A receiver was appointed by order of the court dated May 16, 1900. By the order of appointment the receiver was "authorized to operate and mine said portion of the Nipper lode claim, and all veins and bodies of ore therein, together with all extralateral rights pertaining thereto; to take charge of all ores which may be extracted by him from said portion of the Nipper mining claim; and to have the same removed, reduced, and smelted, so as to realize the most money therefrom," etc. The order of appointment also enjoins the parties, except the cotenants, from interfering with the said receiver in the performance of his duties, and from withholding in any manner the possession of said premises, or any portion thereof, or any of the underground workings thereon or therein, or upon any veins claimed to belong to or within said portion of the said Nipper claim.

The receiver so appointed, it appears, was required to give two bonds—one for $10,000 and one for $25,000. The receiver immediately entered into the possession of the property, and began active mining operations about the 1st of June, 1900. Practically all the mining supplies, machinery, tools, and apparatus of all kinds used by the receiver were purchased by him from the Montana Ore Purchasing Company, and all the ores mined were sold to this company. It appears that this company also advanced money to the receiver when needed to settle his monthly accounts.

The defendant Parrot company in the meantime had appealed to the supreme court from the order appointing the receiver, and such order was reversed by the supreme court in March, 1901. (*Hickey et al.* v. *Parrot Silver and Copper Co.,* 25 Mont. 164, 64 Pac. 330.)

The receiver during his operation of the mine filed his regular monthly statements and reports for all the months except the months of February and March, 1901. To each of these monthly reports the Parrot company filed its objection and protest. The monthly reports of the receiver for the months of February and March, 1901, were not filed until in January, 1902. Objections and protests were filed to these reports by the Parrot company. The receiver had employed an attorney and counselor during his operation of the mine, and had been allowed therefor, but about the time the order appointing the receiver was reversed this counsel ceased to act; and the receiver, after the *remittitur* was filed, employed as his attorneys and counselors, H. L. Maury and Kirk & Clinton. The plaintiff, Arthur P. Heinze, had filed no objections to these monthly statements.

On May 26, 1902, a stipulation was entered into between the receiver and the Parrot company that the taking of the testimony with reference to his various monthly reports should be referred to a referee. This appellant was not a party to this reference. The order of reference was made on that day, and a hearing was had before a referee, which it is claimed by the receiver occupied his time and attention and that of his attorneys for something over three months. Afterward, during the month of December, 1902, the receiver made his final report to the court, asking that he be allowed $28,000 for his own salary, less $4,569 which he had already received, and that he be allowed as expenses $10,000 for his attorney, H. L. Maury, $10,000 for his attorneys, Kirk & Clinton, and $125 for his bookkeeper, J. B. McGinn.

There is a statement in the final report of the receiver that the referee to whom was referred the matter of taking testimony and making findings respecting the objections and pro-

tests filed by defendant to the several monthly reports of the receiver had made and filed with the clerk "his findings of fact and conclusions of law, and has recommended that judgment be entered confirming, allowing, and settling as correct each and every of said reports." Reference is also made in the final report to all of the testimony, and to all of the exhibits filed by the referee, "as if all said testimony and exhibits were in this report set out at length and made a part hereof." However, the testimony taken by the referee does not appear in the record, unless it is the same as that given before the court. No separate action appears to have been taken on the report of the referee, and no question respecting the same is involved here, or with reference to the allowance or rejection of the several monthly accounts contained in the monthly reports of the receiver.

To this final report of the receiver objections were filed by all of the plaintiffs, acting jointly, except the sublessee, Arthur P. Heinze, who filed separate, specific objections thereto. Objections and protests were also filed by defendant Parrot company. The objections made to the final report of the receiver by the plaintiffs who filed objections jointly, and by plaintiff, Arthur P. Heinze, who appeared separately in filing objections, are practically the same, and relate to expenses incurred by the receiver for counsel fees and other expenses since the 25th day of March, 1901, at which date the *remittitur* from the supreme court was filed in the district court. Objections were also made to the compensation claimed by the receiver, and it is alleged that the sum of $500 per month during the ten and one-half months which intervened between the appointment of the receiver and the reversal of the order making such appointment is ample compensation for the receiver. The objections filed by the defendant Parrot company are much more extensive, and cover nearly every phase of the receivership, including practically the same objections made by the plaintiffs, and adding thereto specific objections, to wit, to the sale of property made by the receiver after the reversal of the order appointing him, and the filing of the *remittitur* in the

district court where the order was originally made. The report is further objected to on the ground that the receiver had not properly discharged the duties of his trust, had not fairly accounted for all ores mined, and had not received for such ores their market value when he had disposed of the same, and on many other grounds, making it necessary at the hearing to introduce evidence relating to almost every phase of the work performed during the period the property was in the hands of the receiver.

The hearing on this final report was had in January, 1903, and from the evidence then introduced it appears that after the order appointing the receiver had been reversed, and the remittitur in the case filed in the district court, the receiver had, without any order by the court therefor, sold certain furniture for the sum of $95, and certain miners' tools and other implements and supplies, receiving therefor $5,162.28, all of which he had set forth in his final report. It appeared further that his gross receipts during the period of his receivership were $392,775.43, plus the amount which he had received from the sale of the furniture, mining machinery, and tools as above stated, after the filing of the *remittitur;* that his total disbursements for all purposes were $408,280, leaving a deficit of $10,342.29. The propriety of the action of the receiver in selling this furniture, mining implements, supplies, etc., is not questioned by the appellant on this appeal.

On January 17, 1903, the court signed an order overruling all objections to the final report of the receiver, and allowing him $16,000 for all services performed by him as such; also allowing $5,000 for legal services performed by H. L. Maury, $5,000 for legal services performed by Kirk & Clinton, and $125 for services as bookkeeper by J. B. McGinn. That none of these sums had been paid, except $4,569 retained by the receiver on account. "That the said report, as to all matters not herein specifically set forth, is adopted and approved by the court." Afterward the receiver filed a motion that an order be made requiring Arthur P. Heinze to pay to the receiver the amount found due, to wit, the sum of $21,556. This.

motion was contested, but was sustained by the court, and on January 31, 1903, the order was entered from which this appeal is taken.   It was determined on a former appeal of this case that this order is in effect a final judgment, and is appealable.   (*State* v. *District Court, supra.*)

The objections made by appellant are substantially that the court erred in taxing the expense of the receivership remaining unpaid against the plaintiff, Arthur P. Heinze; that the sums allowed were excessive; that no allowance should be made as compensation to the receiver, or for attorney's fees, or for any services performed after the reversal of the order appointing the receiver.

It will be noticed that the plaintiffs in the principal case did not ask that a receiver be appointed; that subsequent to the commencement of the action this appellant, who is one of the plaintiffs, filed his separate petition asking that a receiver be appointed; that the order of appointment was based upon this petition; that it was afterward determined that this appointment was wrongful.

Where a receiver is legally appointed, he is entitled to compensation for services actually rendered, though the order of appointment be vacated or reversed.   (Beach on Receivers, sec. 769.)   But to whom should this compensation and expense be assessed?   "The compensation of a receiver is taxable costs.   (*Hutchinson* v. *Hampton,* 1 Mont. 39; *Ervin* v. *Collier,* 2 Mont. 605.)   The compensation of a legally appointed receiver, while primarily chargeable to and payable out of the property or funds in his hands, as was held in *Hutchinson* v. *Mampton, supra,* is nevertheless (in absence of exceptional facts) ultimately taxable to the losing party, whose wrong occasioned the appointment, as was declared in *Ervin* v. *Collier, supra."*   (*State ex rel. Cornue* v. *Lindsay,* 24 Mont. 352, 61 Pac. 883.)   "The fees of the receiver may be allowed as costs, and taxed against the losing party upon the entry of final judgment in the action [citing cases].   But this does not preclude the court, upon a discharge of the receiver before the conclusion of the action, as was the case here, from fixing his

compensation, and adjudging payment thereof against the party at whose instance he was wrongfully appointed." (*State ex rel. Heinze* v. *District Court, supra.*)

In *McAnrow* v. *Martin,* 183 Ill. 467, 56 N. E. 168, the court said: "When a receiver obtains possession of money or property under an order which is afterward reversed on appeal, and he is required to restore the money to the person entitled thereto, he cannot claim compensation out of the funds in his hands, but must look therefor to the party who secured his appointment. (*Weston* v. *Watts,* 45 Hun, 219; *French* v. *Gifford,* 31 Iowa, 428; *Verplanck* v. *Mercantile Ins. Co.,* 2 Paige, 438; *Radford* v. *Folsom,* 55 Iowa, 276, 7 N. W. 604.)" The same doctrine is announced in Beach on Receivers, par. 119; *Richmond* v. *Irons,* 121 U. S. 27, 7 Sup. Ct. 788, 30 L. Ed. 864; *People* v. *Jones,* 33 Mich. 303; *Welch* v. *Renshaw,* 14 Colo. App. 526, 59 Pac. 967. As was said in *Ogden City* v. *Bear Lake etc. Irr. Co.,* 18 Utah, 279, 55 Pac. 385: "The expenses incurred by the receiver that would have been necessary for the appellant to incur, had it remained in the possession of its property, and in the control of its business, were properly paid out of the fund, but such as it would not have been necessary for it to incur should be charged to the party procuring the order. Such expenses should be regarded as incurred in consequence of an error at his instance. (*Weston* v. *Watts,* 45 Hun, 219; *City of St. Louis* v. *Gaslight Co.,* 11 Mo. App. 237; *Bank* v. *Bayne,* 140 N. Y. 321, 35 N. E. 630; *Moyers* v. *Coiner,* 22 Fla. 422; *French* v. *Gifford,* 31 Iowa, 428.)" See, also, *Cassidy* v. *Harrelson,* 1 Colo. App. 458, 29 Pac. 525.

The order appointing a receiver is the authority under which he acts. Whenever this is reversed his authority is gone, and it then becomes his duty immediately to render his final report and demand his formal discharge.

The receiver is entitled as a matter of right to the benefit of counsel, when the nature of the trust requires it; and, while he usually selects his own counsel, he cannot make any contract of hiring or agreement for compensation that is binding upon the court, for it is the function of the court to determine both

the necessity for counsel, and the compensation to be allowed therefor.

The receiver is entitled to compensation for services performed by him, and the circumstances and environments of the particular receivership are proper to be considered in determining the amount of this compensation. (See, generally, *Forrester et al.* v. *Boston and Montana Cent. etc. Min. Co. et al.,* 30 Mont. 181, 76 Pac. 2, and cases cited; *McLane* v. *P. & S. V. R. Co.,* 66 Cal. 606, 6 Pac. 748.)

The receiver in this case was in effect a general superintendent, vested with plenary powers, subordinate only to the will of his master, governed by the rules of law and equity; but the employment came from the court, instead of from the mine owner. Reports were made to the court, not to the owner. The court, not the owner, was the master. The duties and labor performed in such case, whether under an appointment by the court as a receiver, or under an employment by the owner as a superintendent, are the same. The party is required by law in both cases to be loyal to his trust, to exercise the diligence and care of a reasonable person, and to use the skill possessed by him in the conduct of the business with which he is intrusted. If he does all this he has complied with all that is required of him, and he is not personally liable for any resultant loss or damage. The receiver was required to give bonds, but his bondsmen are not liable if he is not. The law does not compel one to accept from the court employment as a receiver, any more than it compels him to accept employment from the owner as a superintendent. If he jeopardizes other interests by accepting the receivership, he does it voluntarily, and is not entitled to be recompensed therefor.

It is well established that the compensation allowed a receiver must be reasonable, but why compensation must be greater, in order to be reasonable, for doing certain work, when the hiring is done by the court, than it would be for the same duties if the hiring were done by an individual, is not apparent. Where extra duties are enjoined, as giving a bond or otherwise, that are not compensated for in some other manner, additional

pay may be allowed; otherwise there is no reason why it should not be the same. And these remarks apply equally to allowances for counsel fees.

The considerations that should be controlling with the court in fixing compensation are the value of the property in controversy; the practical benefits derived from the receiver's efforts and attention; time, labor, and skill needed or expended in the proper performance of the duties imposed, and their fair value, measured by the common business standards; and the degree of activity, integrity, and dispatch with which the work of the receivership is conducted. The percentage basis is not always the equitable method. As was said in *Grant* v. *Bryant,* 101 Mass. 570, "the court does not regulate the compensation of its officers upon the basis of a fixed commission upon the amount of money passing through their hands, but allows them such an amount as would be reasonable for the services required of and rendered by a person of ordinary ability and competent for such duties and services." (See, also, the following cases: *Schwartz* v. *Keystone Oil Co.,* 153 Pa. St. 283, 25 Atl. 1018; *Coston Safe Deposit etc. Co.* v. *Chamberlain,* 66 Fed. 847, 14 C. C. A. 363; *French* v. *Gifford,* 31 Iowa, 428; *Jones* v. *Keen,* 115 Mass. 170; *Martin* v. *Martin,* 14 Or. 165, 12 Pac. 234; *United States* v. *Church etc.,* 6 Utah, 43, 21 Pac. 516; *Sherley* v. *Mattingly,* 21 Ky. Law Rep. 289, 51 S. W. 189; *Union National Bank* v. *Mills,* 103 Wis. 39, 79 N. W. 20.)

The order of appointment required the receiver to file his monthly reports on or about the 21st day of each month. Notwithstanding this order, and although the receivership was ended by the reversal of the order of appointment, the receiver delayed filing his reports for the last two months of his operations for more than ten months after the *remittitur* had been filed, and his final report was not filed for some twenty-one months after that date. No reason is given for this extraordinary delay. Objections were made to each monthly report when filed, and no hearing was had. During all this time an attorney was employed, who was paid monthly for his services. More than one year after the termination of the receivership

the receiver and the defendant, without regard to the appellant, entered into a stipulation as follows: "It is hereby stipulated and agreed by and between the attorneys for the defendant (the said defendant being the only party to this suit, objecting to any of the receiver's reports), and the attorneys for the receiver, Tom McLaughlin, that the hearing of the objections to each and all of the receiver's reports heretofore filed in this cause, may be referred by the court to William E. Carrol, Esq., with power in the said William E. Carrol, to hear testimony thereon and to report to the court, findings of fact, conclusions of law, and a judgment on each and every of the said reports, the objections thereto," etc.   This stipulation is signed by the attorneys of the defendant and by the attorneys for the receiver. The order of reference was made in accordance with the terms of this stipulation, and a hearing had, this appellant not participating.   It is claimed by the receiver that it took him some two or three months to prepare for this hearing.   It is the duty of a receiver to transact his business in such a manner, and to keep his books and vouchers in such shape, that they may be ready for examination at any time.   If evidence *dehors* the receiver's books and vouchers is necessary to sustain his reports, that evidence certainly would be more easily obtained at the time than after many months of delay.   At this hearing the objections made to these reports were not sustained, but the receiver's reports were sustained by the referee.

Where costs have been caused by the negligence of the receiver, he cannot, in equity, maintain a claim for reimbursement either out of the trust fund, or from the party who caused his wrongful appointment.

Whether the defendant in this case is liable for the attorney's fees for this hearing before the referee on the ground that the objections were not sustained, or whether the receiver should bear the expense of his own counsel, are questions not involved here, the only question being, is this appellant liable for these attorney's fees? and the answer, under the facts presented here, is that he is not.

The receiver is not entitled either to compensation or allow-

ances for any new business transacted after the filing of the *remittitur*, for the receivership had been terminated. After that date the receiver had no authority to employ counsel whose compensation could be charged against the trust fund or against this appellant, and neither could the court direct or approve such employment or sanction such payment. When the *remittitur* was filed the expense of this receivership terminated, so far as the same could be a charge against the trust fund or against this appellant.

The allowance of $125 was "for the services of J. B. McGinn as bookkeeper in the last month, preparing the last two reports, settling up of the accounts, and straightening up the books, and finally closing out the business and accounts." We think this item of expense should be allowed.

The judgment of the court fixing the receiver's compensation and allowing attorney's fees is general; but, from the evidence, it is apparent that it extended this compensation so as to cover time subsequent to the termination of the receivership; that it also allowed attorney's fees for the hearing before the referee on the monthly accounts which should have been settled prior to the order of reversal. This was error, for which the case should be reversed. Evidence relative to the compensation of the receiver and the allowance for counsel fees may be admitted for the purpose of informing the court as to what is just and reasonable under the circumstances; but, where the court has personal knowledge of all that has been done by the attorneys, it is not always necessary that it should hear evidence respecting the amount which it should allow, for a court is presumed to know the value of attorney's services, and it is for its own enlightenment that such evidence is heard.

We think this judgment should be reversed.

Per Curiam.—For the reasons stated in the foregoing opinion, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Rehearing denied April 4, 1905.