BUTTE MINER CO. et al., Respondents, v. M. J. CONNELL CO., Appellant.

(No. 3,762.)

(Submitted June 11, 1917.   Decided July 2, 1917.)

[166 Pac. 296.]

*Receivers—Excessive Compensation—Modification of Award.*

1.   The secretary-treasurer of a mercantile corporation was appointed receiver thereof.   His compensation as secretary-treasurer had been $4,000 per annum.   His bond as receiver was paid by the trust.   The net profits of the concern for the period during which he acted as receiver (ten months and eighteen days) were about $48,000, subject to deductions for his compensation and attorneys' fees.   The receivership proceedings were of a friendly nature.   His duties as receiver were much the same as they had been as employee of the company, and his responsibility to the court was no greater than it had been to it. He was allowed the sum of $20,180 as compensation for his services as receiver for the time mentioned above.   *Held,* excessive, and that an allowance of $8,000 was ample under the circumstances.

*Appeal from District Court, Silver Bow County; J. B. McClernan, Judge.*

Suit by the Butte Miner Company, a corporation, against the M. J. Connell Company, a corporation, and W. J. Ruffner, its receiver.   From an order allowing the receiver compensation, the M. J. Connell Company appeals.   Order modified.

*Messrs. J. L. Wines, T. J. Harrington, John E. Corette* and *William T. Pigott,* for Appellant, submitted a brief and one in reply to that of Respondent; *Mr. Pigott* argued the cause orally.

The order of May 10, 1915, declared "that the compensation of the receiver be and the same is hereby fixed and allowed at $17,000 in addition to what he had already received."   That order contained no provision as to whether the plaintiffs or defendant should be charged with the allowance, nor any provision as to the fund out of which it was payable.   It was therefore not appealable.   (*State ex rel. Heinze* v. *District Court,* 28 Mont. 227, 72 Pac. 613; *Rochat* v. *Gee,* 91 Cal. 355, 27 Pac. 670; *Grant* v. *Superior Court,* 106 Cal. 324, 39 Pac. 604; *Grant* v.

*Los Angeles & P. Ry. Co.*, 116 Cal. 71, 47 Pac. 872; *Ogden City v. Bear Lake etc. Irr. Co.*, 18 Utah, 279, 55 Pac. 385; High on Receivers, 4th ed., p. 936, sec. 796a.)

The court erred to the prejudice of appellant in allowing the respondent $20,000 as compensation, or any sum in excess of $8,000; and appellant insists that this court should either reverse the judgment of allowance or modify it by scaling the amount down to a reasonable sum, with costs to appellant. (See *Hickey* v. *Parrot S. & C. Co.*, 32 Mont. 143, 154, 108 Am. St. Rep. 510, 79 Pac. 698; *French* v. *Gifford*, 31 Iowa, 428; *Williams* v. *Morgan,* 111 U. S. 684, 28 L. Ed. 559, 4 Sup. Ct. Rep. 638; *McArthur* v. *Montclair Ry. Co.*, 27 N. J. Eq. 77; *Central Trust Co.* v. *Wabash etc. Ry. Co.*, 32 Fed. 187; 34 Cyc. 473.)

*Mr. J. E. Healy,* for Respondents, submitted a brief, and argued the cause orally.

MR. JUSTICE SANNER delivered the opinion of the court.

On July 1, 1914, the M. J. Connell Company, a merchandising corporation doing business in Butte, had a capital stock, all outstanding, of $250,000. Its gross assets, book value, were $402,685.86. Its acknowledged liabilities were $304,302.30; but its president, W. T. Knott, had, without any authority from it, issued in its name promissory notes to a very large amount, not one dollar of which had gone through its books or come into its possession or been expended for its use. It was affiliated with the H. B. Claflin Company of New York, by whom or whose stockholders the majority of its stock was held, and the H. B. Claflin Company had failed. Publication had been generally made that the M. J. Connell Company was involved in that failure. There was danger that efforts would be made to surcharge it with the promissory notes so unauthorizedly issued in its name, and its assets were in peril of dissipation. Its local head was Daniel Coleman, its vice-president and general manager; and in this situation he, together with the Butte Miner Company, one of its creditors, filed a complaint praying for the

appointment of a receiver to conduct its business, conserve its assets, and distribute the proceeds thereof to those entitled to the same. The M. J. Connell Company, by W. J. Ruffner, its secretary, filed answer admitting all the allegations of the complaint, joined in the prayer thereof, and submitted its rights in the premises to the protection of the court. Thereupon the plaintiffs and the defendant joined in an application that Mr. Ruffner be named as receiver, which was done. He took the oath and qualified by filing a surety company bond as required by the order of the court in the sum of $30,000.

At the time he was appointed Mr. Ruffner was secretary and [1] treasurer of the M. J. Connell Company. He had been such for two years. His duties, as described by himself, were these: "I had charge of the finances and of the offices; my duties were largely with expense, and looking after the funds, insurance and statistics; I kept the general books, the property books, and helped on everything; I acted practically as superintendent in handling help and expense; in fact, there was nothing I didn't do." For these services, which occupied all of his time and called forth his best efforts, he had been compensated at the rate of $4,000 per annum. According to his own report as receiver filed March 31, 1915, the gross assets of the trust then amounted to $496,096.02, with liabilities of $347,591.45, leaving a balance of $148,504.57; and he testified that the net profits for the period concerned had been about $48,000, subject to deductions for his compensation and for attorney's fees. Upon his application at the inception of the receivership, the court had entered an order allowing him to withdraw, as partial compensation, $300 per month, which he did, receiving in all $3,180. He asked for $30,000, and was allowed $17,000 additional to what he had received, or $20,180, as his compensation for 10 months and 18 days' services as receiver. The propriety of that order, in so far as it authorized a gross allowance in excess of $8,000, is the subject of this appeal.

We think that $8,000 is more than ample. It represents for about 270 working days of eight or nine hours each exactly twice the annual salary Mr. Ruffner had theretofore accepted; yet the service rendered by him as receiver was not twice as great nor twice as difficult as that which he had rendered as secretary and treasurer. Indeed, his hours and his duties were very much the same, while he was held to neither greater nor less loyalty, neither greater nor less diligence, neither greater nor less skill, than had been due from him to the company. (*Hickey* v. *Parrot S. & C. Co.*, 32 Mont. 143, 155, 108 Am. St. Rep. 510, 79 Pac. 698.) It is true that as receiver he was bonded, was responsible to the court instead of to the directors and stockholders of the company, his correspondence was augmented and somewhat different in character, and he was called upon to consult counsel from time to time; but his bond was paid for by the trust, his responsibility to the court was not greater than it had been to the company, he had the same efficient assistance in the conduct of details as before the receivership, and by his side stood Coleman, a very competent man, performing for $500 per month the same functions that he had performed as Ruffner's superior. In point of fact, the burden and heat of the day fell upon these two, Ruffner and Coleman, after the receivership as it had done before, save that their responsibilities were theoretically reversed.

The record shows that for a receivership the respondent's tenure was singularly uneventful and placid. The complaint, the answer, the order appointing the receiver, his qualification, all occurred on the same day—circumstances which tend to support the claim that the proceedings were friendly, involved no contest, promised no overwhelming burden, demanded no masterful ability. There was no litigation. The vast mass of unauthorized commercial paper which threatened to engulf the concern was handled in New York without serious trouble to the receiver and without detriment to his trust. He was never called upon for anything more than an ordinary kind of clerical or technical service in connection with these matters. His principal service was to conduct the business in Butte, and this he

did, with the assistance he had, in a manner worthy of all praise. He has been a good steward, and should be paid accordingly; this does not mean, however, that trust estates in this jurisdiction are to be regarded as common prey. "It is well established," we said in the *Hickey Case*, above cited, "that the compensation allowed a receiver must be reasonable; but why compensation must be greater, in order to be reasonable, for doing certain work, when the hiring is done by the court than it would be for the same duties if the hiring were done by an individual is not apparent. Where extra duties are enjoined, as giving a bond or otherwise, that are not compensated for in some other manner, additional pay may be allowed; otherwise there is no reason why it should not be the same."

Counsel for respondent vigorously insists that the circumstances leading up to this receivership present a monumental instance of commercial piracy which the courts ought not to make it too easy to repeat, and therefore the allowance below should stand as a discouragement to such proceedings. We agree with the premise, but not with the conclusion. The control of commercial piracy is a matter for general law, and the rights of others besides those responsible for the Claflin failure are involved in this receivership; and to permit this allowance to stand would, in our judgment, be a precedent of evil example.

Some procedural questions are raised, but we do not deem them of sufficient importance for special notice.

The order appealed from is modified so as to allow the receiver, respondent here, the sum of $4,820 in addition to the $3,180 he has heretofore had, making in all $8,000 as his compensation, and the cause is remanded to the district court to proceed accordingly; appellant to recover its costs on this appeal.                    *Order modified.*

Mr. Chief Justice Brantly and Mr. Justice Holloway concur.