**MITCHELL v. LAY et al.**

No. 6760.

Circuit Court of Appeals. Ninth Circuit.

Sept. 7, 1932.

As Amended by Order Filed on Denial of Rehearing Nov. 14, 1932.

Frank L. Guerena, of San Francisco, Cal., for appellant.

Marshall B. Woodworth, of San Francisco, Cal., for appellee receiver.

Walker Peddicord, of San Francisco, Cal., for appellee Helen Lay.

Before WILBUR and SAWTELLE, Circuit Judges, and NETERER, District Judge.

NETERER, District Judge.

The prior history of this case appears in (C. C. A.) 48 F.(2d) 79, where an order appointing a receiver was reversed and the trial court was "directed to settle the accounts of the receiver and to order the receiver to turn over to the appellant all property seized under its order by the receiver as soon as the appellant has secured an appointment as receiver thereof in the action now pending in the state court." Mitchell v. Lay (C. C. A.) 48 F.(2d) 79, 85.

To reverse the order settling the account, approved December 15, 1931, made pursuant to the above direction, the case is now here for review. Objections are made to the account as a whole on jurisdictional grounds and to incumbrance of the estate with unwarranted expenses of receivership.

Instead of filing an account for settlement, the receiver and his attorney incurred further expense in presenting a petition for writ of certiorari to the Supreme Court without success. The receiver was appointed July 29, but it was not until August 6 that an appearance was entered by the appellee Lumbermen's Association admitting the award, its failure to pay, and its insolvency, and consent to the appointment of the receiver, that jurisdiction was conferred upon the court. 48 F.(2d) 79, supra, and cases there cited. The sole ground for receivership, if any, was the possible removal from the state of California, of $8592.11 on deposit in a local bank to the state of Texas, corporate home of the appellee company, and in which state a receiver was appointed at Houston, Tex., July 31. However, such act was restrained on complaint of the appellant, insurance commissioner of California, who, in pursuance of his official duty and the laws of the state of California, filed on August 1 (St. 1919, p. 265), in the state court, praying that he be appointed receiver under the provisions of the state law to carry out his official obligations.

It is obvious that the state insurance commissioner moved promptly and no loss to the creditors of the state of California was proba-

ble, all of which was obvious to the receiver, a lawyer, and his attorney. The duty to preserve the estate to save the fund for creditors at a minimum expense moves the arm of the chancellor, and before the appellee Lay was a qualified litigant on jurisdictional grounds, made so by the appearance of appellee company August 6 and its answer August 8, the state court had exclusive jurisdiction, and had restrained removal of funds, but continued the hearing of appointment of receiver until the show cause order issued by the trial court herein enjoining the state insurance commissioner from doing certain acts in relation to the subject-matter.

■ In Mitchell v. Lay, supra, we held that, although the receiver was erroneously appointed, the court had jurisdiction of the property after appearance and answer of defendant corporation. Objections to many items in the receiver's reports are made, but, in view of our conclusion, only the hereinafter items will be considered: The fees allowed the receiver and his attorney; an allowance of $750 for expenses of a trip to Washington, D. C., by the attorney, and costs in the Supreme Court, which the court will judicially notice.

■ Worthwhile and necessary services were rendered by the persons who had been on the regular staff of employees of the insolvent corporation in the state of California, and employed by the receiver, and reasonable compensation for services of competent persons of ordinary ability is properly allowed. Walton N. Moore Dry Goods Co. v. Lieurance (C. C. A.) 38 F.(2d) 186, 191. No reason appears to disallowance of any specific item other than the items mentioned.

The reports of the receiver and his attorney are prolix, and accomplishment much magnified. Culled from the record, we find income reported in the amount of $44,726.76 and disbursements, $30,677.74, of which $12,-000 is an allowance to the receiver and his attorney, $6,000 each, and $1,092.75 to Bronson, Bronson & Slaven for special services rendered in the case of Noble v. Bacon, and other matters. The total allowance for attorneys' fees is $7,092.75, not including a claim for $2,000 filed by J. L. Kearney, special attorney, employed for services in an ancillary receivership in Los Angeles where $9,-019.71 was collected.

Nine hundred and six claims, aggregating $211,039, were filed, and after being investigated, claims amounting to $136,099 were rejected. All of the claims were investigated and disposed of. The reasons for rejection were either improper verification, want of notice by the policy holders, or insufficient merit; also, some of a miscellaneous nature, and others because filed by nonresidents.

Nineteen suits were commenced and reduced to judgment, $14,091 being collected. Twenty-one other actions were commenced, aggregating $10,611. These cases are pending. Six other cases are reported, involving $129,068. One of these was settled for $100. In another, judgment for $899 was recovered. Included is the case of Noble v. Bacon, and statement is made: "Judgment of $10,000 recovered; now on appeal." But the judgment was unfavorable to appellee, and the case was handled by a special firm of attorneys. The report states: "Although the attorney for the receiver did not participate in the trial, he followed it closely and strongly advised taking an appeal." The receiver testified: "In a strict sense I performed no legal work, but Mr. Woodworth and I were discussing legal matters all the time. * * * My supervision consisted in holding hearings over a period of 90 days, one half dozen trips to Los Angeles, and conducting the business generally, trying to wind it up. * * * I signed checks against the funds of the association. I personally took charge of some of the many claims and some were mailed direct to the office. * * *"

The Pacific Coast manager of the defendant from November 1, 1924, a resident in the city, who had "entire control of all the affairs of the Pacific Coast, including underwriting, accounting and adjustment of claims arising out of policy contracts," was retained in the administrative force during the receivership. And from the report, as well as from the argument at bar, it is reasonably to be deduced that his judgment was controlling in all matters pertaining to administrative functions. His testimony with relation to the estate and the various classes of claims and the disposition made thereof, covering 140 pages of the record, establishes the fact that in practically all, if not all, instances the receiver asked the manager's advice as to the disposition and, after receiving his opinion, would say: "Under the statement of facts made by Mr. Brockmann, the receiver hereby recommends" that the claim be allowed, or disallowed, or whatever disposition was suggested. The manager and assistants received their preinsolvency compensation and did the same service. The estate obtained from these employees beneficial service and for this it is properly charged.

In the record appears a statement of the attorney for his services, bearing items of service practically every day, some appearing as conferences with the receiver, on some occasions conferences with others, and various items of detail that of themselves do not contain any informative matter. When the magnitude of the estate is considered, and in relation to what was said by the court in Moore v. Lieurance, supra (C. C. A.) 38 F. (2d) 186, which expresses the settled view of this court in the instant issue, it is obvious that the order must be reversed.

■ The expense of the trip of the attorney for the receiver to Washington, D. C., re petition for writ of certiorari, was not warranted. Rule 38 of the Supreme Court (28 USCA § 354) provides that a petition for writ of certiorari shall contain a summary and short statement of the matter involved and the reasons relied upon for allowance of the writ, and that the supporting brief must be direct, concise, and in conformity with rules 26 and 27 (28 USCA § 354). Notice of filing the petition, together with a copy of the petition, printed record, and supporting brief, must be served within ten days, and proof thereof filed with the clerk. On the first motion day after 25 days, the petition, record, and briefs are submitted by the clerk to the court for consideration. Paragraph 3 of rule 12 of the Supreme Court (28 USCA § 354) provides, in part: "Oral argument shall not be had thereon unless invited by the court. Nor shall oral argument be had on the question whether * * * a review on certiorari shall be granted. * * *"

No invitation was extended by the Supreme Court. There was no urgency; the property was in no danger of loss as it would pass from the appellee receiver to the state insurance commissioner as receiver of the state court, pursuant to state law. Therefore, no charge may be made against the estate. Neither the receiver nor his attorney were compelled to accept employment, and neither could hope or expect more than reasonable compensation for the services necessarily performed, or allowance of expenses for undertakings that were not warranted or required in the reasonable discharge of duty, or beneficial to the estate.

Judge Dietrich, for this court, with whom sat Judge Rudkin and Judge Wilbur, in Walton N. Moore Dry Goods Co. v. Lieurance, supra, quoted with approval the following from Hickey v. Parrot Silver & Copper Co., 32 Mont. 143, 145, 79 P. 698, 701, 108 Am. St. Rep. 510: "It is well established that the compensation allowed a receiver must be reasonable, but why compensation must be greater, in order to be reasonable, for doing certain work, when the hiring is done by the court, than it would be for the same duties if the hiring were done by an individual, is not apparent. Where extra duties are enjoined, as giving a bond or otherwise, that are not compensated for in some other manner, additional pay may be allowed; otherwise there is no reason why it should not be the same. And these remarks apply equally to allowances for counsel fees."

From the record it is apparent that practically all things that were done in this case, so far as the trial court is concerned, were done upon written stipulations of the plaintiff and defendant, including the designation and appointment of the receiver and approval of reports and allowances to the receiver and his attorney; but the stipulation is not binding on the court. District Court Rule 54, however, requires that: "All applications for allowances to masters, assessors, receivers and their counsel shall be made upon petition, setting forth in reasonable detail the nature of the services rendered and the time spent and shall be heard by the court on the regular law day after at least five days notice to all creditors and all parties interested."

It also appears that there are funds in the possession of the state insurance commissioner, as receiver for the state court, sufficient to pay all claims in the state of California, turned over by appellee, above the amount deposited with the state treasury. This is no reason, however, for unwarranted expenditures. The fund is not largesse for bounty or dole.

■■ Receiverships may not be unduly prolonged, when the welfare of the estate is not reasonably apparent. There is no apparent reason, the welfare of the estate alone considered, why the receivership in federal jurisdiction should have continued when it became apparent that the statutory agent of the state of California, pursuant to law and his official duty, was moving in the proper state jurisdiction, to administer it pursuant to the laws of the state.

In this connection, it may be said that the District Court declined to take this view of the situation, and the receiver, in discharge of his official duty, under such circumstances, was bound to conserve the assets of the trust. Pending the consideration of the petition for rehearing of the order of reversal of this court and application to the Supreme Court

for a writ of certiorari, the issuance of the mandate from this court was suspended. It does not appear that the receiver was responsible for this delay, and no complaint appears in the record by the appellant (and an exhaustive audit was made by the insurance commissioner, as a basis for objections to the account), and the receiver would not be accountable nor subject to criticism for the delay by the court; and it appears that the trial court expressly excepted from the order, compensation for services by the receiver or by his attorney, after date of the denial of the petition for rehearing.

While it is true that the importance of the service rendered by the receiver and his attorney is much exaggerated in the report, in that benefits were claimed for administering funds on deposit in the state treasurer's office and money in the bank, as well as claim of defense of $50,000 suit, since the total liability of the corporation upon that claim was only $10,000, and judgment was for that sum; no benefit, therefore, accrued to the estate. Nor can direct credit be claimed for recommending disallowance of claims which were filed "too late" and claims which were not properly verified. It is the duty of the court to pass upon the various claims, and in good conscience under proper circumstances, the improper verification of the claims would be permitted to be rectified.

It is stated in brief that the allowance of $12,000 to the receiver and his attorney is but 6½ per cent. of the $188,000 estate administered. This suggested basis overlooks the fact that $88,885 of that amount was on deposit with the state treasurer and $8,592.11 on deposit in bank, and neither fund was administered by the receiver. Nor is it conceded that the estate was as much. The suggested basis, however, upon the fund claimed to have been actually administered, would fix the compensation of the receiver and his attorney at $5,870.93, or $2,389.06 each, deducting the allowance for attorney's fees in the ancillary receivership, $1,092.73. The receiver was responsible to the court for the funds and for the administration of the estate, yet it is apparent from the record that practically all was carried on by the administrative force of the insolvent, who was familiar with the entire business of the concern, and there was not need for *much* general supervision disclosed or shown to have been rendered.

A fair consideration of all and every element disclosed by the record convinces us that $3,000 allowance as compensation to the receiver and $3,000 allowance as compensation to the attorney for the receiver, together with allowance of $1,092.73 for the Los Angeles attorney, would amply compensate each for all the services that have been rendered. A like consideration, likewise, moves a disallowance of $750, expenses of the trip to Washington, D. C., and $98.20 for printing, and $30, cost in the Supreme Court, a total of $878.20.

The order of the court approving the report is therefore reversed as to the items mentioned, and the cause remanded to the trial court with instructions to proceed in harmony with this opinion.